**STATE OF HAWAI'I**, by its Attorney General, Warren Price, III, Plaintiff–Appellant/Appellee, v. **JOHN HENRY MAGOON, JR.**, Trustee under that certain unrecorded Declaration of Trust dated August 31, 1982, made by John Henry Magoon, Jr. as settlor, Defendant–Appellant/Appellee, and **RICHARD R. KELLEY**, Trustee under unrecorded agreement dated January 20, 1984, known as "Richard R. Kelley Living Trust," as amended by restatement dated August 7, 1985, Defendant–Appellant/Appellee, and **DIAMOND HEAD ROAD DEVELOPMENT CORP.**, a Hawai'i corporation, Defendant–Appellant/Appellee

NO. 15277

(CIV. NO. 89–2005–07)

AUGUST 19, 1993

Amended by order filed September 7, 1993

MOON, C.J., LEVINSON, NAKAYAMA, AND RAMIL, JJ., AND CIRCUIT JUDGE YIM, IN PLACE OF KLEIN, J., RECUSED

## OPINION OF THE COURT BY MOON, C.J.

Plaintiff–appellant/appellee State of Hawai'i (State) commenced an ejectment action against three landowners — defendants–appellants/appellees John Henry Magoon, Jr. (Magoon), Richard R. Kelley (Kelley), and 3787 Diamond Head Road Development Corporation (DHRDC) (collectively landowners) — alleging ownership of six parcels of real property located along a strip of land in Kaalawai, Oahu, adjacent to the sea below Diamond Head. These parcels, identified as parcel Nos. 2, 4, 5, 6, 8, and 13, to which the landowners also claim ownership and which they have occupied for years, are makai of and abut their respective registered residential lots.

The State and each of the three landowners filed motions for summary judgment or partial summary judgment — the State claiming ownership of all of the parcels in issue, Magoon and DHRDC claiming ownership of parcels 2 and 13, respectively, and Kelley claiming ownership of parcels 4, 6, and 8. Kelley also moved the court for an order that he was not precluded from relitigating the ownership of parcel 5.[1]

---

[1] This court had previously determined that the State held title to parcel 5. *See In re Kelley*, 50 Haw. 567, 445 P.2d 538 (1968).

Pursuant to the circuit court's certification of interlocutory appeals, the State now appeals the denial of its motion for summary judgment regarding parcels 2, 4, 6, 8, and 13. Magoon and DHRDC appeal the denial of their motions for partial summary judgment regarding parcels 2 and 13, respectively. Finally, Kelley appeals the circuit court's (a) denial of his summary judgment motion for parcels 4, 6, and 8, (b) grant of the State's summary judgment motion regarding parcel 5, (c) denial of his motion for an order permitting the relitigation of the title to parcel 5, and (d) the judgment vesting title to parcel 5 with the State.

We conclude that the circuit court erred as a matter of law in denying Magoon's, DHRDC's, and Kelley's motions regarding parcels 2, 13, and 4, 6, and 8, respectively. We also conclude that the circuit court correctly (1) denied the State's motion for summary judgment regarding parcels 2, 4, 6, 8, and 13, (2) denied Kelley's motion for an order permitting relitigation of title to parcel 5, and (3) granted the State's summary judgment motion regarding parcel 5.

## I. FACTS
### A. Historical Background

During the Great Mahele of 1848, King William Charles Lunalilo was granted real property consisting of the Iliaina of Kapahulu, affirmed by Land Commission Award 8559–B, Apana 32. Upon his death, this land was devised to the Trustees of the Lunalilo Estate (Trustees). The Trustees sought to lease the land; however, in 1881, this court interpreted the King's will and determined that the Trustees had no power to do so and ordered its sale. *See Matter of Estate of Lunalilo*, 4 Haw. 381 (1881).

Prior to the sale, the Trustees subdivided the Lunalilo property into two major units — parcels labeled Lots 1

through 37, and parcels labeled Lots A through I. Lots A through I make up the original Kaalawai subdivision and are situated near the sea below Diamond Head. Located between Lots A through G and the ocean is a strip of land (the strip) bearing no designation. Parcels 2, 4, 5, 6, 8, and 13 are part of this strip. (See diagram below.)

The Trustees sold Lot 36 to the Territory of Hawai'i in 1884, but the original Kaalawai subdivision was not included in the sale. The following year, Lots A through I were conveyed to various private purchasers: (1) Lots A and B to W. James Smith; (2) Lots C and D to J. R. Walker; (3) Lot E to Likelike Cleghorn; (4) Lots F and G to Antone Rosa; and (5) Lots H and I to W. A. Widemann.[2]

---

[2] Magoon (parcel 2) claims to be the successor–in–interest of W. James Smith (Lot A); Kelley (parcels 4, 5, 6, and 8) claims to be the successor–in–interest of W. James Smith (Lots A and B) and J.R. Walker (Lot C); and DHRDC (parcel 13) claims to be the successor–in–interest of Antone Rosa (Lot F).

## B. **Land Court Applications, Decisions, and Decrees**

On January 28, 1959, the Trustees filed Land Court Application No. 1767 (Lunalilo Application) to register fee simple absolute title to the strip. Landowners adjoining the strip opposed the Lunalilo Application and asserted ownership to the particular parcels of land abutting their respective Lots A through I based on the 1885 deeds to the original grantees and claims of adverse possession.

The State also opposed the Lunalilo Application and claimed ownership to the disputed area. The State asserted that:

> (1) The fee simple ownership of the [strip] was never conveyed to the [Trustees] because the land was not included within the boundaries of the Iliaina of Kapahulu; (2) The fee simple ownership of the [strip] was never conveyed to the Trustees because it was a public road prior to the Land Commission Award to Lunalilo, and an award in name only does not pass title to an existing public roadway; or (3) *The State has acquired fee simple title to the [strip] by means of statutory dedication as a public road.*

*See* Land Court Joint 1767 Decision at 2 (emphasis added).

Roy and Estelle Kelley filed Land Court Application No. 1768 (Kelley Application) on January 30, 1959, seeking to register absolute fee simple title to their residence Lot B and Lot A (parcel 5). Because the Kelleys also opposed the Lunalilo Application, the land court on March 2, 1961 ordered the Lunalilo and Kelley Applications consolidated for trial but limited the Kelleys only to presenting matters of defense raised in their answer to the

Lunalilo Application. The March 2, 1961 order also pro-
vided that upon completion of the trial of the mutual
issues raised in both applications, the land court would
then proceed to complete the trial of the Kelley Applica-
tion.

On July 3, 1962, the land court issued a joint decision
(1767 Decision), concluding that the Trustees had con-
veyed title to the strip to the original grantees of the
abutting parcels of land by the deeds executed in 1885,
and therefore, the Trustees "ha[d] no title in the [strip] to
register." 1767 Decision at 14. Because of this determi-
nation, no evidence was presented on the landowners'
claims of adverse possession.

The land court also found all of the State's asserted
claims to be without merit and that it had "failed to
establish any claim to this area." *Id.* The land court sub-
sequently issued a decree (1767 Decree) on March 19,
1963, adjudging that the Trustees did not have title to
register.

The Kelley Application was only opposed by the Trus-
tees and the State. The State initially asserted arguments
identical to those in opposition to the Lunalilo Applica-
tion, but added a new defense concerning the location of
the highwater mark. After the 1767 Decision and Decree
were issued in the Lunalilo Application, the land court
completed the separate trial on the Kelley Application and
issued a supplemental decision on January 9, 1964 (1768
Decision), which explicitly ruled:

> The parties appearing herein are bound by the
> Joint Decision rendered by this Court [the 1767
> Decision] . . . wherein this Court held, among
> other things, that the Trustees did not have title
> to the [strip] (which includes [parcel 5]), and that

the State of Hawai'i had failed to establish any claim to the said [strip] (and Lot A).

1768 Decision at 2. Relying heavily on the findings and conclusions contained in the 1767 Decision, the land court concluded that the Kelleys had successfully established their fee simple ownership to parcel 5 to the high water mark. *Id.* at 7.

In view of the land court's finding that the Kelleys had otherwise proven their title, the land court declined to hear the Kelleys' adverse possession claim. The land court then issued a decree (1768 Decree) confirming and registering fee simple title to the Kelleys for Lots A (parcel 5) and B.

## C. **Appeals from Land Court Decrees**

In 1963, the Trustees alone appealed the 1767 Decree from the Lunalilo Application, whereas the Trustees and the State appealed the 1768 Decree from the Kelley Application in 1964. While the Trustees' appeal of the 1767 Decree was pending in this court, they reached a settlement with the abutting landowners (excluding the Kelleys) and quitclaimed any interest over the strip to them. The quitclaim deeds were placed in trust (settlement trust), with the abutting landowners as beneficiaries. Subsequently, by stipulation, First National Bank of Hawai'i, as trustee of the settlement trust, was substituted for the Trustees and moved for dismissal of the pending appeal.

Meanwhile, the State, which had appealed only the 1768 Decree, moved to consolidate its appeal with the Trustees' appeal of the 1767 Decree. This court, however, granted First National Bank's motion to dismiss the Trustees' 1767 appeal "with prejudice . . . there being no

prejudice to the remaining respondents in the case" and also denied the State's motion to consolidate.

The State's appeal of the 1768 Decree, in which this court only had personal jurisdiction over the State and the Kelleys, and *in rem* jurisdiction over Lot A (parcel 5), presented the narrow question "whether [parcel 5] . . . was conveyed to the Kelleys' predecessor in title, Smith, thereby giving [the Kelleys] good title." *In re Kelley*, 50 Haw. at 568, 445 P.2d at 540.

Despite its statement regarding the narrow scope of the appeal, this court reversed the land court's 1768 Decree and determined that the State held title, not only to parcel 5, but also to the entire strip. This court determined that: (1) the land court erred in giving title to the Kelleys to register because the Trustees did not include title to parcel 5 as part of the conveyance of the subdivision lots to the abutting landowners; (2) the Trustees had abandoned title to the strip by holding it out as a road on a 1882 subdivision map; and (3) the State had acquired the strip as of the date of the Highways Act of 1892 and the Act retrospectively divested the Trustees of title to the strip. *Id.* at 581, 445 P.2d at 547.

## D. **The Present Action**

On July 3, 1989, the State filed the present ejectment action in the First Circuit Court against Magoon, Kelley, and DHRDC. The State claimed ownership of all six parcels on the grounds that this court in *In re Kelley* had determined that the State owned the entire strip, which included these particular parcels of land. Magoon, Kelley, and DHRDC counterclaimed against the State, asserting ownership of their respective parcels.

The State then filed a motion for summary judgment regarding ownership of all parcels, that is, parcels 2, 4, 5,

6, 8, and 13. The State claimed that there were no genuine issues of material fact and argued that: (1) it owned the strip due to its 1884 deed, the Highways Act of 1892, and the *Kelley* decision; (2) *Kelley* was *stare decisis* as to its principles of law; and (3) based on *Kelley*, the landowners were barred by *res judicata* and collateral estoppel from relitigating the issue of ownership.

Magoon and DHRDC each filed motions for partial summary judgment as to parcels 2 and 13, respectively. Both assert "statutory estoppel," that is, that the plain and unambiguous language of Hawai'i Revised Statutes (HRS) § 501–53 (1985), precluded the State from relitigating ownership of these parcels in the ejectment action. In the alternative, both relied on the doctrines of *res judicata* and collateral estoppel.

In Kelley's motion for summary judgment as to parcels 4, 6, and 8, he asserted that, pursuant to statutory estoppel under HRS § 501–53 and collateral estoppel, the State was precluded from relitigating ownership of parcels 4, 6, and 8 based on the land court's 1767 Decision. Kelley also moved for an order allowing him to relitigate, in the State's ejectment action, ownership of parcel 5, which he asserted was not precluded by the *In re Kelley* decision.

On February 7, 1991, the circuit court issued a single order disposing of all motions for summary judgment and partial summary judgment in the following manner. The circuit court denied the State's motion for summary judgment as to parcels 2, 4, 6, 8, and 13, but granted its motion for parcel 5. The circuit court also denied Magoon's motion for partial summary judgment for parcel 2 and DHRDC's partial summary judgment motion for parcel 13. Finally, the circuit court denied Kelley's motion for summary judgment regarding parcels 4, 6, and 8, and his

motion for an order permitting relitigation of ownership of parcel 5.

Subsequent to Rule 54(b) certification, *see* Hawai'i Rules of Civil Procedure (HRCP) Rule 54(b), these interlocutory appeals followed.

## II. **STANDARD OF REVIEW**

This court reviews an order of summary judgment under the same standard applied by the circuit court. On appeal, we must determine that there are no genuine issues of material fact and that the moving party clearly demonstrates it is entitled to judgment as a matter of law. *Amfac, Inc. v. Waikiki Beachcomber Inv. Co.*, 74 Haw. 85, 104, 839 P.2d 10, 22, *reconsideration denied*, 74 Haw. 650, 843 P.2d 144 (1992); *Cuba v. Fernandez*, 71 Haw. 627, 631, 801 P.2d 1208, 1211 (1990); HRCP Rule 56(c) (1990).

In the case before us, the parties agree that no genuine issues of material fact exist. We therefore need only determine whether each moving party is entitled to judgment as a matter of law.

## III. **DISCUSSION**

Preliminarily, we note that in order for the State to maintain its ejectment action in the circuit court against the landowners, the State must necessarily prove that it owns the parcels in issue. *See State v. Midkiff*, 49 Haw. 456, 460, 421 P.2d 550, 554 (1966). The landowners each claim ownership and contest the State's alleged ownership of the specific parcels at issue. Consequently, we must focus on the question of ownership of these particular parcels of land.

## A. **Parcels 2, 4, 6, 8, and 13**
(The State and All Landowners)

The primary arguments regarding ownership asserted by Magoon (parcel 2), Kelley (parcels 4, 6, and 8), and DHRDC (parcel 13) are essentially identical. They argue that they are not bound by this court's decision in *In re Kelley*, but that the State is bound by the land court's 1767 Decision, which ruled that the Trustees conveyed title to the strip to the original grantees. The landowners, therefore, conclude that the State is precluded from relitigating ownership of these parcels based upon statutory estoppel, pursuant to HRS § 501–53. As a secondary argument, the landowners assert that the State is precluded from relitigating ownership under the doctrine of collateral estoppel. Magoon and DHRDC additionally contend that relitigation is precluded under the doctrine of *res judicata*.

The State essentially argues that as a "respondent" in the land court action, it cannot be bound by the 1767 Decision because HRS § 501–53 only applies to "applicants." According to the State, if a contesting respondent wished to register title to land, "it must file an application and bring its own action as an applicant to register title to disputed property." We disagree.

HRS § 501–53 provides in relevant part:

If the court finds that the applicant has not title proper for registration, a decree shall be entered dismissing the application and the decree may be ordered to be without prejudice in whole or in part; *but unless it is so ordered, it shall bind the parties, their privies, and the land in respect to any issue of fact which has been tried and determined.*

(Emphasis added.)

"When construing a statute, our foremost obligation 'is to ascertain and give effect to the intention of the legislature' which 'is to be obtained primarily from the language contained in the statute itself.'" *Franks v. City and County of Honolulu*, 74 Haw. 328, 334–35, 843 P.2d 668, 671 (1993) (citations omitted). Moreover, it is well–settled "that courts are bound to give effect to all parts of a statute, and that no clause, sentence or word shall be construed as superfluous, void, or insignificant if a construction can be legitimately found which will give force to and preserve all words of the statute." *State v. Ortiz*, 74 Haw. 343, 351–52, 845 P.2d 547, 551–52 (citations omitted), *reconsideration denied*, 74 Haw. 650, 849 P.2d 81 (1993); *accord Camara v. Agsalud*, 67 Haw. 212, 215–16, 685 P.2d 794, 797 (1984).

According to the plain language of the statute, unless the land court decree is specifically ordered to be without prejudice, in whole or in part, it is binding on "the parties, their privies, and the land in respect to any issue of fact which has been tried and determined." HRS § 501–53. There is no question that the State was a party to the land court proceedings and is thus bound by the factual findings of the land court.

Assuming that this court concludes that it is bound by the 1767 Decree, pursuant to HRS § 501–53, the State further argues that the 1767 Decree merely denied the Trustees' application to register title, implying that the written joint decision of the land court, which vested title in the landowners to their respective parcels (except parcel 5), is not to be considered on appeal.

We acknowledge that HRS § 501–53 refers solely to a *decree* and does not expressly mention a land court *decision*, which decision normally sets forth the factual issues

tried and determined, and serves as the basis for the land court's conclusions. However, as this court has stated, " 'even absent statutory ambiguity, departure from literal construction is justified when such construction would produce an absurd and unjust result and the literal construction in the particular action is clearly inconsistent with the purposes and policies of the act.' " *Franks*, 74 Haw. at 341, 843 P.2d at 674 (citation omitted).

Upon review of the Land Court Registration Statute, HRS chapter 501, we are of the firm opinion that HRS § 501–53 implicitly contemplates a "decision" when referring to "any issue of fact which has been tried and determined." We believe that, on appeal, an appellate court must necessarily look to the written decision of the land court to determine what issues of fact were actually tried and determined, because such information is not statutorily required to be contained in the decree.

Pursuant to HRS § 501–74, a land court decree must contain the following:

> Every decree of registration shall bear the date of the year, day, hour, and minute of its entry, and shall be signed by the registrar. It shall state whether the owner is married or unmarried, and if married the full name of the husband or wife. If the owner (or spouse of the owner) has been known by more than one name, all the names of such person shall be stated. The wife's maiden name and surname shall be stated in all cases. If the owner is under disability it shall state the nature of the disability, and if a minor, shall state the minor's age. It shall contain a description of the land as finally determined by the court; and shall set forth the estate of the owner, and also, in such manner as to show their relative

> priority, all particular estates, mortgages, ease-
> ments, liens, attachments, and other encum-
> brances including rights of husband or wife, if
> any, to which the land or the owner's estate is
> subject; and may contain any other matter prop-
> erly to be determined in pursuance of this chap-
> ter. The decree shall be stated in a conveni-
> ent form for transcription upon the certificates of
> title hereinafter mentioned.

HRS § 501–74 (1985); *see also* LAND COURT REGISTRATION
AND CONVEYANCING IN Hawai'i at 6 (1935) (the decree is
described as a "final document [that] is a simple state-
ment of ownership. It is purposely made brief, simple,
easy of understanding. It is essentially a commercial
document for it is the original certificate of title itself
designed for use in the busy marts of trade where time
is of such vital importance."). Obviously, in order for
an appellate court to evaluate the correctness of the
conclusions reached by the land court as set forth in the
decree, it must necessarily examine the factual findings
in the decision upon which the land court's conclusions
are based.

Pursuant to HRS § 501–63 (1985), "an appeal to
the supreme court shall lie from the final decree of
the land court on behalf of any party aggrieved by the
decree." The final decree of the land court constitutes
the final judgment in a land court action and is akin to a
final judgment in a civil case. *Cf.* HRCP Rule 58 (requir-
ing every judgment to be set forth on a separate docu-
ment). In an appeal of a civil case, where a final judg-
ment has been entered pursuant to jury verdict, the
appellate court's review is not limited to the judgment
itself. The court must consider the entire record in order
to determine the correctness of the conclusion stated in

the final judgment. Similarly, in a civil action tried without a jury, the appellate court reviews the trial court's findings of fact and conclusions of law to determine whether the judgment is correct.

If an appellate court, in review of a land court decree, were to limit its review solely to the language of that decree, that portion of HRS § 501–53, which provides that the parties, their privies, and the land are bound by the issues of fact tried and determined, would be rendered nugatory. Moreover, the statutory informational requirements of a decree, as provided for under HRS § 501–74, would necessarily require expansion to accommodate the factual issues tried and determined; otherwise, appellate review of a land court decree for correctness would be impossible. Requiring appellate review of a land court decree without the benefit of its written decision would be akin to requiring review of a civil judgment entered subsequent to a jury or jury–waived trial without the benefit of the entire record or the court's findings of fact and conclusions of law.

Accordingly, we acknowledge what should be intuitively obvious that a land court decree need not contain factual issues tried and determined in a land court application. We further acknowledge that an appellate court is not limited to reviewing the decree, but should review the land court's written decision and the entire record to determine the binding effect on the parties in accordance with the mandate of HRS § 501–53. To determine otherwise would unduly restrict the appellate court's authority of review to the four corners of the decree and thus lead to absurd and unjust results.

When we apply our construction of HRS § 501–53 to this case, we reach a single, unavoidable result: the land court did not order the 1767 Decree to be without

prejudice, in whole or in part, and therefore all the parties, including the State, their privies, and the land are bound by all issues of fact tried and determined in the Lunalilo Application, which are recited in the 1767 Decision.

The State contends that even if HRS § 501–53 applied, "it would only bind the State to specific facts determined in that decision." The State asserts that "at a minimum, the holding in the Lunalilo Application (1767) that the adjoining landowners own the Old Diamond Beach Road [the strip] was a question of law and fact" and therefore HRS § 501–53 does not estop the State from relitigating the issue of ownership to the disputed area. The State's contention is without merit.

Following a trial wherein all parties, including the State, presented evidence allegedly establishing their respective ownership, the land court decided the ultimate issue of ownership adversely to the State's factual assertions, concluding that the State had failed to establish any title to the parcels in issue. The land court's decision specifically set forth the following pertinent findings of *fact*:

> After considering all of the evidence in the case and being fully advised on the law I find that:
>
> 1. A road did not exist over the disputed area before the grant to Lunalilo;
>
> . . . .
>
> 3. The disputed area was never dedicated to a public use for road purposes by statutory dedication, there being absent both an intent to dedicate and an acceptance by the government;
>
> 4. The disputed area was never devoted to a public purpose in such a

manner so as to carry title to the fee simple to the government;

5. The disputed area was at most encumbered by an easement of way in favor of the public or an easement of way in favor of the Grantees of the abutting lots. Whether or not the said easement of way was in favor of the public or the abutting lot owners is immaterial since such easement was long ago abandoned and the statute of limitations has run several years over since said abandonment;

. . . .

7. The [Lunalilo] Trustees clearly intended to convey title in fee simple to the disputed area to their Grantees, the owners of lots abutting the disputed area, by their deeds dated April 17, 1885 and introduced in evidence as Applicants' Exhibits 5, 6, 7, and 8; and

8. The descriptions used in the conveyances of the Grantees of the lots abutting on the disputed area conveyed title in the disputed area to the said Grantees.

9. Each Grantee appearing in the deeds dated April 17, 1885 (Applicants' Exhibit 5, 6, 7, and 8) secured title to the land in the disputed area to the extent of the portion of the land described by metes and bounds in their respective deeds.

The land court's decision provided in relevant part that the Trustees had conveyed the strip to the original grantees by deeds executed in 1885 from which the landowners received their respective titles. The land court expressly determined that all of the State's claims were meritless and that it had failed to establish its contention that it owned the entire strip, including parcels 2, 4, 6, 8, and 13.

There is no doubt that the State was aggrieved by the 1767 Decision and Decree, yet failed to appeal it. In light of the plain and unambiguous language of HRS § 501–53, the State is now estopped from relitigating ownership of parcels 2, 4, 6, 8, and 13 because it is bound by the land court's factual findings that were decided adversely to the State in the 1767 Decision.[3]

The State relies heavily upon *In re Application of Kaimuki Land Co.*, 35 Haw. 254 (1939), for the proposition that an appeal from land court is from the *decree* and not from its *decision*. In *Kaimuki Land*, the applicant, Kaimuki Land Company, Limited (KLC), filed an application to register title to certain land in land court. Marguerite Mamo Clark, as a respondent, filed an answer opposing KLC's ownership. Ray J. O'Brien and the Hawaiian Trust Company, Limited (collectively trustees) also filed an answer in which they claimed title to the land

---

[3] Because we agree with the landowners' statutory estoppel argument, we need not reach in detail their alternative arguments, except to note that the State would also be precluded, under the doctrines of *res judicata* and collateral estoppel, from relitigating ownership of parcels 2, 4, 6, 8, and 13. Accordingly, we deem the State's counter arguments that the doctrines of *res judicata* and collateral estoppel preclude the landowners from relitigating ownership based upon *In re Kelley* to be without merit.

in issue and disputed any interest claimed by Clark or KLC.

The land court expressly determined that respondent Clark was the owner of the property and entered a decree dismissing KLC's application. Apprehensive that failure to appeal the land court's decision would bar them from ever claiming title in a subsequent action, the trustees appealed.

The *Kaimuki Land* court determined that the trustees' apprehension that *res judicata* would bar them from relitigating title was groundless, stating "[a]n appeal to this court by a writ of error runs from the final decree. Specific rulings are considered only incidental in passing upon the correctness of the final judgment." *Kaimuki Land*, 35 Haw. at 257 (citations omitted).

We note that *Kaimuki Land* dealt solely with the issue of common law *res judicata* and completely overlooked the then–existing and applicable language in Revised Laws of Hawai'i (RLH) 1935 § 5032, which is the predecessor to HRS § 501–53 and is substantively identical to it. RLH § 5032 provided:

> If the court finds that the applicant has not title proper for registration, a decree shall be entered dismissing the application and *the decree may be ordered to be without prejudice in whole or in part; but unless it is so ordered, it shall bind the parties, their privies, and the land in respect to any issue of fact which has been tried and determined.* The applicant may withdraw his application at any time before final decree, upon terms to be determined by the court. The court may in its discretion require the applicant who moves to withdraw his application or to substitute some other person as applicant, to stipulate that *he*

> *shall be bound by the result of any issue of fact which has been tried and determined, and such stipulation shall bind the parties, their privies and the land itself.*

(Emphasis added.)

The *Kaimuki Land* court merely cited to RLH § 5032 for the land court's authority to dismiss the application to register title by KLC. By not reviewing and analyzing the then–existing statutory estoppel language of RLH § 5032, we believe the *Kaimuki Land* court reached its conclusions incorrectly. Furthermore, although the *Kaimuki Land* court held that the land court was without authority to adjudicate title as between respondents who challenged an applicant's claim to title and that an appellate court was similarly restricted, it is apparent that this court in *Kelley* overruled *Kaimuki Land sub silentio*. In *Kelley*, this court affirmatively determined that a *respondent*, the State of Hawaiʻi, held title to parcel 5, which the *applicant*, Kelley, had sought to register via the Kelley Application.[4]

---

[4] During oral argument, the State argued that *In re Kelley* did not determine that the State held title to parcel 5, but that this court merely set forth "principles of ownership." The argument is both meritless and inconsistent with the State's position set forth in its opening brief, which stated: "*Kelley* expressly determined that the State owned the Old Diamond Head Beach Road (the "strip" which included parcel 5)," citing to "*Kelley*, 50 Haw. at 581, 445 P.2d at 547," wherein this court held:

> For the foregoing reasons, we conclude that there existed a public road of which the disputed parcel [parcel 5] was a part, that the disputed parcel was not conveyed to Smith [the original grantee of parcel 5] because it was abandoned to the public by the Lunalilo trustees, and that the disputed parcel was then made the property of the Government by the Highways Act of 1892 and has not been abandoned by the Government by due process of law.

*In re Kelley*, 50 Haw. at 581, 445 P.2d at 547.

We are convinced that the holding of *Kaimuki Land* was contrary to statutory law and the principles properly applied in *In re Kelley*. Thus, we now explicitly overrule *Kaimuki Land*.

The State also argues that, pursuant to the doctrine of *stare decisis*, the *In re Kelley* decision is controlling in this case. Under the doctrine of *stare decisis*,

> "where a [legal] principle has been passed upon by the court of last resort, it is the duty of all inferior tribunals to adhere to the decision, without regard to their views as to its propriety, until the decision has been reversed or overruled by the court of last resort or altered by legislative enactment."

***Robinson v. Ariyoshi***, 65 Haw. 641, 653, 658 P.2d 287, 297 (1982) (citations omitted), *reconsideration denied*, 66 Haw. 528, 726 P.2d 1133 (1983). *Stare decisis* relates to "the effect of legal propositions announced in prior adjudications upon *subsequent* actions which involve similar questions between strangers to the proceedings in which the adjudications were made." ***State v. Hawaiian Dredging Co.***, 48 Haw. 152, 397 P.2d 593 (1964) (emphasis added). *In re Kelley* was issued subsequent to the valid 1767 Decision and Decree; we cannot and will not apply the doctrine of *stare decisis* retroactively. Whether *In re Kelley* has any *stare decisis* effect prospectively is not an issue before us, and we decline to address that issue at this time.

Finally, the State contends that the circuit court was correct in deciding that the 1767 Decision does not preclude the State from relitigating the issues decided in that case because this court, on July 21, 1967, dismissed the appeal of the 1767 Decree "with prejudice," finding that

the dismissal would have "no prejudice to the respondents remaining in the case," *i.e.* the State. We disagree.

The trial court, in its February 7, 1991, order stated in pertinent part:

> The Lunalilo Trustees *and the State appealed* the *Lunalilo App.* [1767], and the State appealed the *Kell[e]y App.* [1768] . . .
>
> On July 21, 1967, the [s]upreme [c]ourt dismissed the [1767] appeal with prejudice stating, 'there being no prejudice to the respondents remaining in the case.' . . .
>
> The [s]upreme [c]ourt found that the State's interest in properties involved in [1767] was not prejudiced by the dismissal of the [1767] appeal. Thus, the [c]ourt concluded that the motion of the State to consolidate the appeals of [1767 and 1768] was rendered moot by said dismissal. The effect of said action was to preserve the State's claim to parcels involved in [1767].

(Emphasis added.)

The circuit court's reasoning that the effect of this court's language in the order of dismissal was to "preserve the State's claim to parcels involving [1767]" is faulty because its conclusion was based on its erroneous finding that the State had appealed 1767. The record is clear (and the State concedes) that it did not appeal 1767.[5] Also

---

[5] In its opening brief, the State admitted that:

> The Lunalilo Trustees appealed the Land Court's decision in [1767] to this [c]ourt. The adjoining landowners and *the State were appellees to the appeal.* In addition, both the State and the Lunalilo Trustees appealed the Land Court's decision in [1768] to this [c]ourt. Only the Kelleys were appellees to this appeal. . . .

(Emphasis added.)

erroneous was the circuit court's determination that the qualifying language in this court's order — that there was "no prejudice to the respondents remaining in the case" — included the State. There is no reference in the record to indicate that the qualifying language, "respondents remaining in the case," referred to the State. Moreover, it is illogical to dismiss an appeal *with prejudice* and yet allow one or more parties to the appeal to pursue their claims as though the dismissal were without prejudice.

"It is elementary that where a party to a suit does not appeal from the decree entered therein[,] he [or she] must be held to acquiesce in it[.]" *Castle v. Irwin*, 25 Haw. 786, *hrg. denied*, 25 Haw. 807, *hrg. denied*, 25 Haw. 813 (1921). Having accepted the land court's decision by failing to appeal 1767 for whatever reason, the State cannot be said to be one of the "respondents remaining in the case" who would not be prejudiced by the dismissal order. By not appealing 1767, the State obviously would have been prejudiced by this court's dismissal of 1767 because the State would then have no vehicle to contest any aspect of the land court's 1767 Decision and Decree on appeal. On the other hand, the respondent landowners who prevailed in 1767 by being determined to be the owners of the parcels in question would sustain "no prejudice" by this court's dismissal of the appeal.

In our view, it is therefore apparent that the qualifying language, "respondents remaining in the case," referred to the respondent landowners and not the State. We further hold that this court's dismissal with prejudice of the appeal of 1767 was a final adjudication binding on all parties to the case. We note that to hold otherwise would be directly contrary to the fundamental purpose of the doctrine of *res judicata*. As we expressed in *Kauhane v. Acutron Co.*, 71 Haw. 458, 795 P.2d 276 (1990):

The purpose of the doctrine of *res judicata* is "to prevent a multiplicity of suits and [to] provide a limit to litigation." It serves to "relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication." The *res judicata* doctrine thus furthers the interests of litigants, the judicial system and society by bringing an end to litigation where matters have already been tried and decided on the merits. " 'It is a rule of fundamental and substantial justice, 'of public policy and private peace[.]' ' "

The doctrine therefore " 'permits every litigant to have an opportunity to try his [or her] case on the merits; but it also requires that he [or she] be limited to one such opportunity.' " Unsatisfied litigants have a remedy: they [may] appeal through available channels. But they [may not], even if the first suit may appear to have been decided wrongly, file new suits.

*Id.* at 463–64, 795 P.2d at 278–79 (citations omitted).

Therefore, even assuming that *In re Kelley* (1768) determined that the land court's decision and decree in 1767 was erroneously decided, the State's failure to appeal 1767 precludes it from relitigating that case. Merely because the litigant in this case is the State of Hawai'i, which claims on behalf of the public the enjoyment of the parcels in dispute, we cannot disregard the applicable law. We are compelled to hold the State accountable for its failure to appeal in the same manner and to the same extent as private individuals under like circumstances.

Based on the foregoing discussion, we hold that the State is precluded from maintaining its ejectment action with respect to parcels 2, 4, 6, 8, and 13, pursuant to HRS § 501–53. We now turn to the remaining parcel of land in dispute — parcel 5.

## B. **Parcel 5**
### (The State and Kelley)

The State argues that its motion for summary judgment concerning parcel 5 was properly granted by the circuit court because this court's decision in *In re Kelley* is *res judicata* as to Kelley and precludes him from relitigating ownership of parcel 5 in the State's ejectment action. We agree.

Under the doctrine of *res judicata*,

" '[t]he judgment of a court of competent jurisdiction is a bar to a new action in any court between the same parties or their privies concerning the same subject matter, and precludes the relitigation, not only of the [claims that] were actually litigated in the first action, but also of all grounds of claim [and defense that] might have been properly litigated in the first action but were not litigated or decided.' "

*Pele Defense Fund v. Paty*, 73 Haw. 578, 599, 837 P.2d 1247, 1261 (1992), *cert. denied*, 113 S. Ct. 1277 (1993) (quoting *Morneau v. Stark Enters., Ltd.*, 56 Haw. 420, 422–23, 539 P.2d 472, 474–75 (1975) (citations omitted)); *accord* *Silver v. Queen's Hospital*, 63 Haw. 430, 435–36, 629 P.2d 1116, 1121 (1981).

In deciding whether *res judicata* applies, three questions must be answered in the affirmative: " '[First,] [w]as the issue decided in the prior adjudication identical with

the one presented in the action in question? [Second,] [w]as there a final judgment on the merits? [And third,] [w]as the party against whom the plea [of *res judicata*] is asserted a party or in privity with a party to the prior adjudication?' " ***Morneau v. Stark Enterprises, Ltd.***, 56 Haw. 420, 424, 539 P.2d 472, 475 (1975) (citation omitted).

Here, the answers to all three questions regarding the State, the Kelleys, and parcel 5 are in the affirmative. There is no doubt that *In re Kelley* and the present case involve identical issues. In the State's ejectment action, Kelley seeks to relitigate the issue of ownership of parcel 5, the identical parcel of land over which this court in *In re Kelley* had *in rem* jurisdiction. *See **In re Kelley***, 50 Haw. at 568, 445 P.2d at 540. In addition, Kelley, the party against whom the State is now asserting *res judicata*, is in privity with his predecessors in interest, Roy and Estelle Kelley, who were parties in *In re Kelley*. Finally, the *In re Kelley* decision constitutes a final judgment on the merits regarding the ownership of parcel 5. Thus, the doctrine of *res judicata* applies.

We find Kelley's attempt to avoid the preclusive effect of the *In re Kelley* decision unconvincing. Kelley argues that this court in *In re Kelley* made *sua sponte* declarations which his predecessors in interest were not given an opportunity to litigate fairly and fully, and that such declarations in effect divested them of parcel 5 without due process of law, "if they acquired title to Parcel 5 by adverse possession."

The three declarations classified by Kelley as *sua sponte* are: (1) "the trustees ha[ve] abandoned the title to the land of which Parcel 5 is a part in 1885;" (2) "the Highways Act of 1892 . . . operated retrospectively to divest the Trustees of vested title to the land of which Parcel 5 is a part, and vest the title in the Hawaiian

government on the date the Highways Act of 1892 took effect;" and (3) "the land of which Parcel 5 is a part 'was made the property of the Government by the Highways Act of 1892 and has not been abandoned by the Government by due process of law.' "

We first note that we have been presented with a limited record on appeal because we do not have the full evidentiary record from the *In re Kelley* appeal and the Kelley land court application (1768). However, we do have the State's opening brief in its appeal in *In re Kelley*, and it is clear that the State argued the issue of statutory dedication. Thus, Kelley's predecessors in interest had notice of and an opportunity to respond, if they chose, to the issue of statutory dedication and the Highways Act of 1892. Regarding their adverse possession claim, upon determining that parcel 5 belonged to the State, this court concluded that

> [w]hile the Kelleys reserved the issue of adverse possession in the trial court, the conclusion that the Government acquired the fee precludes them, in any case, from raising the issue. There is no adverse possession against the sovereign, in this case the Government, unless expressly provided for by statute.

*In re Kelley*, 50 Haw. at 581, 445 P.2d at 547 (citations omitted).

We also note that because of the scant record on appeal, we are unable to confirm whether the remaining alleged *sua sponte* declarations were actually *sua sponte*. "It is elementary that an appellant must furnish to the appellate court a sufficient record to positively show the alleged error." *State v. Hawaiian Dredging Co.*, 48 Haw. 152, 158, 397 P.2d 593, 598 (1964) (citation omitted);

*accord* ***Union Building Materials Corp. v. Kakaako Corp.***, 5 Haw. App. 146, 151, 682 P.2d 82, 87, *reconsideration granted*, 5 Haw. App. 683, 753 P.2d 253 (1984). Because Kelley has failed to provide a complete record to support his allegations, he has not positively shown the alleged errors.

Furthermore, if Kelley's predecessors in interest were dissatisfied with this court's decision in *In re Kelley*, they failed to avail themselves of the remedy of filing a motion for reconsideration or appealing through available channels. *See* ***Kauhane***, 71 Haw. at 463, 795 P.2d at 279. Assuming *arguendo* that this court in *In re Kelley* violated Kelley's due process rights, appeal to the United States Supreme Court was available. *See* 28 U.S.C. § 2101 (1977).

Finally, Kelley's supporting citation to ***Robinson v. Ariyoshi***, 753 F.2d 1468 (9th Cir. 1985), for the proposition that "constitutional challenges are timely presented when the state takes action to enforce a decision against parties who did not have a 'full and fair opportunity' to litigate *sua sponte* declarations in the decision, or the Constitutional claims which arose from those *sua sponte* declarations[]" is invalid. The United States Supreme Court vacated this Ninth Circuit court decision one year later. *See* ***Ariyoshi v. Robinson***, 477 U.S. 902 (1986).

We therefore hold that Kelley is precluded from relitigating ownership of parcel 5.

## IV. CONCLUSION

Based on the foregoing, we hold that the circuit court (1) properly denied the State's motion for summary judgment regarding parcels 2, 4, 6, 8, and 13, (2) properly granted its summary judgment motion regarding parcel 5, and (3) correctly vested title to parcel 5 in the State.

We also hold that the circuit court erred as a matter of law in denying Magoon's and DHRDC's motions for partial summary judgment regarding parcels 2 and 13, respectively.

Moreover, the circuit court erred as a matter of law in denying Kelley's partial summary judgment motion regarding parcels 4, 6, and 8, but properly denied his motion for an order permitting relitigation of title to parcel 5.

Accordingly, we (1) affirm the State's vested title to parcel 5, (2) vacate in part the circuit court's summary judgment order with respect to the landowners' motions for partial summary judgment, and (3) remand this case to the circuit court for entry of judgment in favor of Magoon (vesting title to parcel 2 in him), in favor of DHRDC (vesting title to parcel 13 in it), and in favor of Kelley (vesting title to parcels 4, 6, and 8 in him).

*Steven S. Michaels* (*Dona L. Hanaike* and *Johnson H. Wong*, on the briefs), Deputy Attorneys General, for plaintiff–appellant/appellee State of Hawai'i.

*Clinton R. Ashford* (*Robert B. Graham* and *Charles A. Price*, with him on the briefs) for defendant–appellant/appellee John Henry Magoon, Jr., Trustee.

*Donald E. Scearce* for defendant–appellant/appellee Richard R. Kelley, Trustee.

*James M. Sattler* for defendant–appellant/appellee 3787 Diamond Head Road Development Corporation.