768 P.2d 668

**STATE of Arizona, Appellant,**

v.

**Stephen Russell WALKER, Appellee.**

**No. 1 CA–CR 12251.**

Court of Appeals of Arizona, Division 1, Department B.

Jan. 26, 1989.

---

Thomas E. Collins, Maricopa Co. Atty. by Richard Seabrook, Deputy Co. Atty., for appellant.

Dean W. Trebesch, Maricopa County Public Defender by James L. Edgar, Deputy Public Defender, for appellee.

JACOBSON, Judge.

The issue on appeal is whether a finding by a city magistrate in a civil traffic proceeding that defendant was "not responsible" can collaterally estop the state from prosecuting defendant for criminal felonies arising out of the same traffic occurence.

The trial court dismissed charges against defendant of unlawful flight from a law enforcement vehicle, a class 5 felony, and endangerment, a class 6 felony, on the basis that the doctrine of collateral estoppel precluded the state from prosecuting him because he had been found "not responsible" in civil traffic court on a similar complaint. The state appeals from this dismissal.

Defendant committed certain motor vehicle related offenses on March 22, 1987. As a result, he was cited into municipal court for a civil traffic violation, "Exiting the Freeway Where Prohibited." In addition he was cited for the felonies noted above, based on his driving and eluding a police officer who sought to stop him for the civil traffic violation. The municipal court citation was disposed of first and the city magistrate found him "not responsible." In superior court, defendant moved to dismiss the felony charges, claiming that, under *Ashe v. Swenson,* 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970), the state was precluded from prosecuting him on the felonies because he had been found "not responsible" on the civil traffic complaint. He argued that the sole issue at the civil hearing was whether he had been driving the vehicle when it improperly exited the freeway and this issue was resolved in his favor. The trial court dismissed the action, granting defendant's motion to dismiss on the basis of collateral estoppel.

On appeal, the state argues the trial court erred in granting defendant's motion to dismiss for several reasons: (1) that collateral estoppel should not apply because no record was made of the prior civil proceedings; (2) that no adversarial proceedings took place because the state was not represented by counsel; (3) that no mutuality of parties existed between the two proceedings; (4) that the civil judgment was not based on the merits; and (5) that the justice court lacked jurisdiction to decide issues in the criminal prosecution. The state also argues that because of the unique nature of civil traffic courts, which are legislatively mandated to utilize expedited and informal procedures, decisions of that court provide an insufficient basis to support application of the doctrine of collateral estoppel to preclude litigation of later felony charges based on conduct occurring in close temporal and physical proximity to the civil traffic violation. *See State v. Ratliff,* 304 Or. 254, 744 P.2d 247 (1987).

We need not address the state's arguments that collateral estoppel cannot apply when the lack of a record precludes a determination of what the dispositive fact issue was in the first forum. To allow defendant to assert collateral estoppel under the circumstances presented in this case would be inappropriate on another, more substantial, ground. To subject the state to issue preclusion from civil proceedings in an informal forum where it lacked incentive to litigate as fully as it would in a criminal forum would circumvent the legislature's purposes in creating the expedited dispositional procedures for civil traffic violations. For the policy reasons described below, we decline to apply the doctrine of collateral estoppel in this case.

We initially note that the statutes that give rise to defendant's appearance in city court, A.R.S. §§ 28–1071 *et seq.*, are designated "Procedure for Adjudication of Civil Traffic Violations." These statutes specifically provide that "[v]iolations of statutes relating to traffic movement and control ... shall be treated as civil matters...." A.R.S. § 28–1071(A). The burden of proof in these proceedings shall be "by a preponderance of the evidence," A.R.S. § 28–1076(C), and the "civil sanction" shall not exceed $250. A.R.S. § 28–1076(E). Moreover, a person charged with a civil traffic violation is not entitled to a jury trial. A.R.S. § 28–1076(C).

With these statutes in mind, we note that the constitutional basis of the application of the doctrine of collateral estoppel in a criminal prosecution is based upon principles of double jeopardy. *Ashe v. Swenson; State v. Ratliff.* Clearly, when a defendant has not previously been placed in jeopardy, that is, subjected to a criminal sanction, *Ashe* does not require collateral estoppel as a matter of constitutional law. *See Miranda v. Beaman,* 95 Ariz. 388, 391, 391 P.2d 555, 557 (1964) (Double jeopardy does not preclude imposition of both a criminal sanction and a civil sanction against the same act) (citing *Helvering v. Mitchell,* 303 U.S. 391, 58 S.Ct. 630, 82 L.Ed. 917 (1938)). In *Ratliff,* an administrative hearing officer decided that an officer had illegally stopped a motorist and declined to suspend that

person's license. 744 P.2d at 249. In a subsequent criminal prosecution for driving while under the influence, the defendant argued that collateral estoppel prevented relitigation of the validity of the stop. *Id.* at 248. The court rejected that argument, noting that no constitutional basis for a double jeopardy challenge existed because no criminal sanction could have been imposed as a consequence of the first proceeding. *Id.* (sanction limited to suspension of license).

■ In this case, as in *Ratliff,* no constitutional basis for a double jeopardy challenge exists because no criminal sanctions could have been imposed as a consequence of the first proceeding. It is well established that the state may provide "remedial" civil sanctions that impose monetary fines and assessments to defray the enforcement costs of investigating, monitoring, and prosecuting civil lawbreakers; such civil sanctions can be considered "liquidated damages" designed to reimburse the state for presumed injury done to it and to make it whole. Such remedial sanctions are not imposed to punish the lawbreaker. *See Rex Trailer v. United States,* 350 U.S. 148, 76 S.Ct. 219, 100 L.Ed. 149 (1956); *United States ex rel. Marcus v. Hess,* 317 U.S. 537, 63 S.Ct. 379, 87 L.Ed. 443 (1943).

Here, the statutory civil sanction for a traffic violation cannot exceed a fine of $250, pursuant to A.R.S. § 28–1076, and the statutory penalty assessments imposed, pursuant to A.R.S. §§ 41–2403, 36–2219. This sanction is remedial, not punitive, in both purpose and effect, and thus does not subject defendant to the double jeopardy of two criminal trials or two punishments from the same act. *See United States v. Ward,* 448 U.S. 242, 248–49, 100 S.Ct. 2636, 2641, 65 L.Ed.2d 742 (1980).

■ However, lack of a constitutional basis for application of the doctrine does not end our inquiry because the doctrine of collateral estoppel also has common law roots; it was developed to prevent the wasteful utilization of judicial time in relitigating previously determined matters.

*Allen v. McCurry,* 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980). Common law collateral estoppel may flow from a criminal conviction to a civil case, *State Farm Fire & Cas. Co. v. Reuter,* 299 Or. 155, 700 P.2d 236 (1985), and may flow from a civil case to a criminal prosecution. *People v. Sims,* 32 Cal.3d 468, 186 Cal.Rptr. 77, 651 P.2d 321 (1982).

■ When applying the common law elements of the doctrine, we must determine whether the party against whom the doctrine is to be applied had a "full and fair opportunity" to litigate the claim or issue. *See Ferris v. Hawkins,* 135 Ariz. 329, 660 P.2d 1256 (App.1983) (where the amount at issue in the first action was $1,530.00 and the amount at issue in the second action was $17,715.77, the court observed that the state may, from an objective standpoint, have lacked the incentive to litigate the first case fully); *Red Bluff Mines, Inc. v. Industrial Comm'n,* 144 Ariz. 199, 696 P.2d 1348 (App.1984). The United States Supreme Court has stated:

> We have previously recognized that the judicially created doctrine of collateral estoppel does not apply when the party against whom the earlier decision is asserted did not have a "full and fair opportunity" to litigate the claim or issue.... "Redetermination of issues is warranted if there is reason to doubt the quality, extensiveness, or fairness of procedures followed in prior litigation."

*Kremer v. Chemical Const. Corp.,* 456 U.S. 461, 480–81, 102 S.Ct. 1883, 1897, 72 L.Ed.2d 262 (1982) *quoting Montena v. United States,* 440 U.S. 147, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979). Recognizing the same lack of objective incentive to vigorously pursue the issues in the first forum, the *Ratliff* court stated:

> The mere fact that a party fails to appear at a proceeding does not necessarily mean that collateral estoppel may not later be used against that party. However, when an agency as a matter of policy does not actively participate in certain species of proceedings, there is less reason to hold that agency or those that may be in privity with it are bound by

the resolution of issues at those proceedings.

*Ratliff,* 744 P.2d at 250.

■ Collateral estoppel effect is generally denied to traffic convictions and minor offenses under accepted common law principles. *Gilberg v. Barbieri,* 53 N.Y.S.2d 285, 441 N.Y.S.2d 49, 51–53, 423 N.E.2d 807, 809–10 (1981). The court in *Barbieri* noted that because of the relative insignificance of the charges, defendants have no constitutional right to a jury trial in traffic cases, as they would in a true criminal prosecution, and cannot reasonably be expected to defend with the same vigor. 441 N.Y.S.2d at 52, 423 N.E.2d at 810. *See also* A.R.S. § 28–1076(E) (no right to jury trial for civil traffic violations). This reasoning applies with equal force to the state's lack of incentive to fully litigate civil traffic violations with the same vigor as it would pursue criminal felony offenses.

Arizona courts have also recognized that, in certain circumstances, the state lacks incentive to litigate a case fully. When because of "special circumstances" the party sought to be precluded did not have the "incentive" to obtain a full and fair adjudication in the original action, issue preclusion should not apply. *Ferris v. Hawkins,* 135 Ariz. at 332 n. 3, 660 P.2d at 1259 n. 3. The *Ferris* court held:

> The judicial efficiency which can be obtained through application of principles of issue preclusion must give way where their rigid application would result in frustration of legislative purpose.

*Id.* at 333, 660 P.2d at 1260.

Here, the statutory scheme for civil traffic violations clearly provides that violation hearings be informal; that they be held without a jury; that proof be by a preponderance of the evidence; that the hearings *may* be recorded; and, finally, that the Arizona Rules of Evidence not apply. *See* A.R.S. § 28–1076(C). Furthermore, special rules of procedure for hearings on civil traffic matters specifically provide that the state need not be represented by counsel at the hearing on a civil traffic complaint and that "absent extraordinary circumstances, the state's right to be represented by coun-

sel is waived" unless the state advises the defendant and the court at least ten days prior to the hearing that it will be so represented. *See* Rule 13, Arizona Rules of Procedure for Civil Traffic Violation Cases, 17B A.R.S. Moreover, the court is empowered to call and examine witnesses including the defendant. Thus, litigation is not conducted as it would be in a criminal court with two adversaries and a neutral factfinder not responsible for developing the record. *See* Rule 18, Arizona Rules of Procedure for Civil Traffic Violation Cases.

The legislature thus has clearly attempted to establish a quasi-administrative procedure for handling civil traffic offenses. *See* A.R.S. §§ 28–1071 *et seq.* The court can impose only limited civil sanctions; the procedure is designed to provide a simple and expeditious means of disposing of literally hundreds of thousands of such citations every year in the justice and police courts of the state. A distinct procedure exists in the criminal justice system to determine whether drivers are "responsible" for violating traffic rules and regulations. To allow collateral estoppel to be applied routinely in subsequent criminal cases would give rise to the concerns expressed in *Ratliff:*

> The legislature has established an administrative procedure [for civil license suspension] to be used when a driver refuses a breath test when suspected of driving while intoxicated.... The criminal trial [to determine whether the driver is guilty of driving under the influence of intoxicants] is by constitution and statute more formal and hence more cumbersome. If collateral estoppel could be used against the state in the criminal case, the state ..., to protect its position at the subsequent trial, would have to litigate the administrative hearings more extensively.... Thus, instead of the short, simple proceeding intended by the legislature, the license suspension hearings could become as long and fully litigated as a criminal case. The intent of the legislature presumably was to avoid this.

744 P.2d at 250. Similarly, the California Supreme Court recognized the practical concerns behind its holding that the adjudication of a routine traffic infraction should not act as a bar to the later filing of a criminal charge arising out of the same incident:

> [T]he state's substantial interest in maintaining the summary nature of minor motor vehicle violation proceedings would be impaired by requiring the prosecution to ascertain for each infraction the possibility of further criminal proceedings. The chief reason for classifying some prohibited acts as infractions is to facilitate their swift disposition.... Unconstrained by the more stringent procedural requirements of a major criminal trial, municipal courts and prosecutors are free to develop innovative procedures to expedite traffic cases.... It is obvious that many innovations in court procedures would be jeopardized if district attorneys were charged with the responsibility of combing through 3 million infractions each year to find those few that might additionally involve more serious offenses.

*In re Dennis B.,* 18 Cal.3d 687, 135 Cal. Rptr. 82, 88, 557 P.2d 514, 520 (1976).

The California court also recognized the policy benefits the legislature confers by creating such expedited procedures: defendants benefit from "a swift and inexpensive determination of their cases without risk of major penalties"; the public and the court system benefit "because judicial and law enforcement resources are freed to concentrate on serious criminal behavior." *Id.* These benefits conceivably would be lost by subjecting the state to issue preclusion from the civil traffic forum to the criminal felony forum.

In light of the legislative scheme adopted for the informal disposition of civil traffic violations, and, giving due regard to the vastly different policy considerations in the prosecution of felonies as distinguished from the informal handling of civil traffic matters, we must conclude that the application of the doctrine of collateral estoppel to the civil traffic judgment in this case is clearly unwarranted. We hold that a criminal defendant may not raise collateral estoppel as a bar to prosecution of a criminal

felony offense when preclusion is alleged to result from a judgment of acquittal following a civil traffic hearing authorized under A.R.S. §§ 28–1071 *et seq.*

The order of the trial court dismissing the charges against the defendant is reversed and this matter is remanded to superior court for further proceedings consistent with this opinion.

FIDEL, P.J., and EUBANK, J., concur.