897 P.2d 928

**STATE of Hawai'i, Plaintiff–Appellee,**

v.

**Guyus L. HIGA, Defendant–Appellant.**

No. 17737.

Supreme Court of Hawai'i.

May 17, 1995.

Reconsideration Denied June 13, 1995.

Hayden Aluli, on the briefs, Honolulu, for defendant-appellant.

James M. Anderson, Deputy Prosecuting Atty., on the briefs, Honolulu, for plaintiff-appellee.

Before MOON, C.J., and KLEIN, LEVINSON, NAKAYAMA and RAMIL, JJ.

MOON, Chief Justice.

Defendant-appellant Guyus L. Higa appeals his conviction and sentence for driving under the influence of intoxicating liquor (DUI), in violation of Hawai'i Revised Statutes (HRS) § 291–4 (Supp.1992).[1]  On ap-

---

1. HRS § 291–4 provides in pertinent part:

(a) A person commits the offense of driving under the influence of intoxicating liquor if:
(1) The person operates ... any vehicle while under the influence of intoxicating liquor, meaning that the person concerned is under the influence of intoxicating liquor in an amount sufficient to impair the person's normal mental faculties ...;  or

(2) The person operates ... any vehicle with 0.10 per cent or more, by weight of alcohol in the person's blood.

We note that the 1995 Legislature passed House Bill 715, Conference Committee Draft 1 on May 1, 1995, which lowered the blood alcohol content level to 0.08 per cent.  As of the filing of this opinion, the governor had not as yet signed the bill into law.

peal, Higa contends that his conviction should be reversed because: (1) as a first time offender, he was entitled to a jury trial; and (2) the administrative license revocation proceeding barred a subsequent criminal prosecution under the principles of double jeopardy, res judicata, and/or collateral estoppel.

For the reasons discussed below, we affirm Higa's conviction.

## I. *BACKGROUND*

■ On February 26, 1993, Higa was arrested and charged with DUI. The police confiscated Higa's license and issued him a thirty-day temporary driving permit. As a result of the administrative review that automatically followed his arrest, Higa's license was revoked. Subsequently, Higa requested an administrative hearing regarding his license revocation. At the hearing before the Administrative Driver's License Revocation Office (ADLRO), the administrative decision revoking Higa's license was "rescinded" by the hearings officer on the ground that Higa had requested, but was not given, a blood alcohol test.[2]

At his arraignment on the DUI charge on May 25, 1993, Higa pled not guilty and requested a jury trial, which the court denied. On December 17, 1993, Higa filed a pretrial motion to dismiss the DUI charge against him, arguing that the plaintiff-appellee State of Hawai'i (the prosecution) should be barred from prosecuting the case on the grounds of double jeopardy, res judicata, and/or collateral estoppel. The motion was denied. Thereafter, Higa consented to a stipulated facts trial and was convicted and sentenced as a first-time DUI offender to: (1) a ninety day revocation of his driver's license; (2) fourteen hours of alcohol abuse counseling and assessment; and (3) a fine of $150.00. Higa's sentence was stayed pending disposition of this timely appeal.

2. In order to sustain the license revocation, there must be a showing by a preponderance of the evidence that the driver did in fact drive under the influence of alcohol or drive with a blood alcohol concentration of 0.10 percent or greater or refused to submit to a breath or blood test. *See* HRS § 286–259(e)(3). Because there was no

## II. *STANDARD OF REVIEW*

■ Questions of law are reviewed under the right/wrong standard of review. *State v. Nakata,* 76 Hawai'i 360, 365, 878 P.2d 699, 704, *reconsideration denied,* 76 Hawai'i 453, 879 P.2d 558 (1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1095, 130 L.Ed.2d 1063 (1995).

## III. *DISCUSSION*

Preliminarily, we believe it pertinent to recite the description of Hawai'i's Administrative Revocation Program, which has been aptly set forth in *Kernan v. Tanaka,* 75 Haw. 1, 29, 856 P.2d 1207 (1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1070, 127 L.Ed.2d 389 (1994):

Administrative revocation begins when a police officer stops a motorist suspected of DUI, arrests him or her, and takes possession of the arrestee's driver's license, giving the arrestee notice of the revocation action. The police also present the arrestee with a thirty-day temporary driving permit. HRS § 286–254 requires informing the arrestee of the specific violation for which he or she is arrested, the consequences of refusing to be tested for blood-alcohol content, that the revocation will be administratively reviewed, and that he or she may request an administrative hearing after the review. HRS § 286–254.

An administrative review of the police officer's actions occurs automatically after the arrest. HRS § 286–258. The arrestee is allowed to submit written information for the reviewing officer to consider along with the breath or blood test results and the sworn statements of the law enforcement officials. HRS § 286–258(b)–(c) and HRS § 286–257. The reviewing officer will revoke the arrestee's license if it is determined that: (1) reasonable suspicion to stop the driver existed; (2) probable

blood alcohol reading of at least 0.10 percent and Higa did not refuse to take the test, there was insufficient evidence to sustain the license revocation. We note that, although the hearings officer used the term "rescind," the ruling is actually a "reversal" under HRS § 286–259(i).

cause was shown that the driver operated the vehicle under the influence of intoxicating liquor; and (3) the evidence proved by a preponderance that the arrestee did in fact drive under the influence. HRS § 286-258(d). A written decision is mailed to the arrestee within eight days after the arrest and issuance of the notice of the revocation.. HRS § 286-258(a). If the arrestee's license is revoked, he or she is further informed of the right to request an administrative hearing, of the right to review the evidence, and all applicable procedures. HRS § 286-258(f).

The arrestee is provided five days from the mailing date of the administrative review decision to request an administrative hearing. HRS § 286-259(a). The hearing must be scheduled to commence no later than twenty-five days after the notice of revocation was issued, unless continued by the director for good cause. HRS § 286-259(a). The arrestee may be represented by counsel. HRS § 286-259(c). The director conducting the hearing (hearing officer) has the authority to examine witnesses and take testimony, receive and determine the relevant evidence, issue subpoenas, regulate the hearing, and make a final ruling. HRS § 286-259(d). The hearing officer may affirm the revocation if: (1) reasonable suspicion to stop the driver is found to have existed; (2) probable cause to believe that the driver was operating the vehicle under the influence of intoxicating liquor is shown; and (3) there is sufficient evidence to prove by a preponderance that the driver did in fact drive under the influence. HRS § 286-259(e). The hearing is recorded in a manner "to be determined by the director." HRS § 286-259(h). If the hearing is continued for good cause at the request of the director, the director is required to extend the arrestee's temporary driving permit during the period of the delay. HRS § 286-259(j). The final written decision of the director is mailed to the arrestee with-

in five days of the hearing. HRS § 286-259(i).

An adverse decision of the hearing officer may be appealed to the district court by filing a petition for judicial review within thirty days after the adverse decision is mailed. HRS § 286-260(a). There is no stay of the revocation pending the appeal. HRS § 286-260(a). Judicial review is confined to the record of the administrative hearing. HRS § 286-260(b). The issues on appeal may include whether the director exceeded his authority, erroneously interpreted the law, acted in an arbitrary or capricious manner, committed an abuse of discretion, or made a determination that was unsupported by the evidence. HRS § 286-260(c). An affirmation of the revocation by the district court may be appealed to the supreme court under the general jurisdiction statutes. See HRS §§ 602-5(1) and 641-1(a). (See Part II, supra).

*Id.* at 17–20, 856 P.2d at 1216–17 (footnotes omitted). We turn now to the issues raised on appeal.

### A. *Higa's Request for a Jury Trial*

■ Higa argues that, because the offense of DUI is constitutionally serious, he is entitled to a trial by jury. This argument was thoroughly considered and rejected by this court in *Nakata* wherein we held that "no right to a jury trial attaches to first-offense DUI." *Nakata*, 76 Hawai'i at 374, 878 P.2d at 718. We therefore affirm the district court's denial of Higa's request for a jury trial.

### B. *Higa's Motion to Dismiss*

Higa essentially contends that, "where the prior administrative proceeding before the [ADLRO] ended in [his] favor,"[3] any subsequent criminal prosecution for DUI is barred under the principles of double jeopardy, res judicata, and/or collateral estoppel.

3. As previously stated, because the ADLRO determined that Higa had requested, but was not given a blood alcohol test, the decision revoking his license was reversed. See supra note 2. According to Higa, such result means that "the [ADLRO] ended in [his] favor." Based on our discussion regarding the double jeopardy issue, we believe the outcome of the ADLRO proceeding is immaterial.

### 1. Double Jeopardy

■ Double jeopardy protects individuals against: (1) a second prosecution for the same offense after acquittal; (2) a second prosecution for the same offense after conviction; and (3) multiple punishments for the same offense. *State v. Lessary*, 75 Haw. 446, 454, 865 P.2d 150, 154 (1994); *United States v. Halper*, 490 U.S. 435, 440, 109 S.Ct. 1892, 1897, 104 L.Ed.2d 487 (1989). Here, Higa asserts that the first and third protections of double jeopardy have been violated.

■ With respect to the first protection, Higa seemingly argues that, because the ADLRO proceeding "ended in his favor," he should not be forced to undergo a second prosecution for the same offense. In other words, Higa implicitly equates "ended in his favor" with an "acquittal," thus implicating the first protection enunciated in *Lessary* and *Halper*. However, because we conclude in the following discussion that the ADLRO proceeding does not bar a subsequent criminal prosecution, whether the ADLRO proceeding "ended in his favor" or resulted in an "acquittal" is immaterial. We therefore turn to the issue regarding multiple punishments for the same offense.

■ Higa argues that he is being exposed to multiple punishments for the same offense, and that, by permitting the government two chances to revoke his driving privileges via a civil administrative proceeding and a subsequent criminal prosecution, both the letter and the spirit of the protection that the double jeopardy clause was designed to ensure is violated.

The prosecution, on the other hand, argues that, because the revocation procedure is a civil administrative proceeding that is separate and distinct from a subsequent criminal prosecution, double jeopardy does not attach. More specifically, the prosecution contends that: (1) the administrative procedure does not entail a criminal prosecution; (2) criminal sanctions cannot be imposed at the ADLRO level; (3) a license revocation is a civil sanction that is remedial in nature; and (4) any criminal sanctions that may be imposed does not qualify as a "second punishment" for the same offense, as proscribed by the double jeopardy clause.

Both Higa and the prosecution rely on *Halper* to bolster their respective positions.[4] We have previously had occasion to examine *Halper* in *Loui v. Board of Medical Examiners*, 78 Hawai'i 21, 889 P.2d 705 (1995). In *Loui*, Wallace Loui appealed from an order affirming the Board of Medical Examiner's decision to suspend him from practicing medicine for one year after he was convicted of attempted first degree sexual abuse and kidnapping.[5] On appeal, Loui argued, *inter alia*, that the suspension violated his constitutional right against double jeopardy. In examining the question of double jeopardy, we stated:

> we view the *Halper* decision as applying mainly to prevent instances where the government seeks to extract monetary damages entirely unrelated to the goal of making the government whole in a civil proceeding from an individual who has already been "punished" in a criminal proceeding.
>
> In the instant case, we are not analyzing the constitutionality of any monetary sanction designed to compensate the government for losses it sustained as a result of Loui's criminal actions. We are only looking at the one-year suspension of Loui's

4. In *Halper*, the defendant was convicted of sixty-five violations of the criminal false-claims statute, for which he was fined $5,000.00 and sentenced to two-years imprisonment. Subsequently, the government was granted summary judgment against the defendant in an action under the civil False Claims Act, for which the defendant faced a statutory penalty of more than $130,000.00. In determining that this later prosecution violated the double jeopardy clause, the United States Supreme Court announced a rule for the rare case wherein "a fixed-penalty provision subjects a prolific but small-gauge offender to a sanction overwhelmingly disproportionate to the damages he [or she] caused." *Id.* at 449, 109 S.Ct. at 1902.

5. We note that it is irrelevant under *Halper* whether the criminal proceeding follows or precedes the civil proceeding. *Loui*, 78 Hawai'i at 27 n. 13, 889 P.2d at 711 n. 13; *United States v. Hudson*, 14 F.3d 536, 540 (10th Cir.1994) (citing *United States v. Bizzell*, 921 F.2d 263, 267 (10th Cir.1990)); *United States v. Rogers*, 960 F.2d 1501, 1506 (10th Cir.1992) (citations omitted); *United States v. Reed*, 937 F.2d 575, 577 n. 3 (11th Cir.1991).

license to practice medicine. Thus, the *Halper* test, which "requires a comparison between the civil penalty and the government's loss resulting from the defendant's conduct," does not apply to the facts of this case. Instead, we must look more broadly at the principles enunciated in *Halper* to determine whether the Board's revocation of Loui's license to practice medicine constitutes a second punishment for purposes of double jeopardy.

*Loui*, 78 Hawai'i at 27, 889 P.2d at 711 (citation omitted).

As in *Loui*, *Halper* does not apply [6] to the present case because "we are not analyzing the constitutionality of any monetary sanction designed to compensate the government for losses it sustained as a result of [the defendant's] criminal actions." *Loui*, 78 Hawai'i at 27, 889 P.2d at 711. Therefore, we must examine, as we did in *Loui*, the broader principles enunciated in *Halper* to determine whether the civil penalty sought in an ADL-RO proceeding constitutes a "second punishment" violative of double jeopardy. *See Halper*, 490 U.S. at 448, 109 S.Ct. at 1901 ("punishment serves the twin aims of retribution and deterrence").

■ Revocation of an individual's driver's license appears to have a two-fold purpose. First, the procedure protects the public interest by removing potentially threatening drivers from our state's roadways; and, second, between the time offending drivers are cited and their criminal adjudication, the procedure precludes such drivers from continuing to drive. *See Kernan*, 75 Haw. at 29, 856 P.2d at 1221, *cert. denied*, —— U.S. ——, 114 S.Ct. 1070, 127 L.Ed.2d 389 (1994) ("In DUI cases, public safety is the main governmental concern."). As the legislature itself has stated:

the main benefit of administrative revocation is that it allows the State to remove a drunk driver's license before the culmination of a lengthy prosecution under the

criminal statute. Currently, a person charged with driving under the influence must be allowed to continue driving until he or she is found guilty in a court of law. This process takes an average of seven or eight months in Hawaii, and even longer, and while this process is going on, the dangerous driver, who quite likely is an inveterate repeat offender, remains on the road.

Hse.Conf.Comm.Rep. No. 137, in 1990 House Journal at 824–25; Sen.Conf.Comm.Rep. No. 137, in 1990 Senate Journal at 825.

■ Although license revocation may, from Higa's point of view, "carry the sting of punishment," *Loui*, 78 Hawai'i at 27, 889 P.2d at 711 (citation omitted), as stated by the Supreme Court in *Halper*, "whether a sanction constitutes punishment is not determined from the defendant's perspective, as even remedial sanctions carry 'the sting of punishment.'" *Department of Revenue of Montana v. Kurth Ranch*, 511 U.S. ——, —— n. 14, 114 S.Ct. 1937, 1945 n. 14, 128 L.Ed.2d 767 (1994) (citations omitted). Rather, we must examine "the purpose actually served by the sanction in question[.]" *Loui*, 78 Hawai'i at 27, 889 P.2d at 711 (citation omitted). The vast majority of cases from other jurisdictions have held that the purpose of the administrative revocation process is not to "punish" those in Higa's position; it is to safeguard the public and reduce traffic fatalities caused by those driving while under the influence of alcohol.

For example, in *Johnson v. State*, 95 Md. App. 561, 622 A.2d 199 (1993), Lewis Johnson was arrested and charged, *inter alia*, with driving while intoxicated and driving under the influence of alcohol. Johnson appeared before an administrative law judge who suspended Johnson's driving privileges for two months and issued him a restricted license. Subsequently, Johnson appeared in court, where his pretrial motion to dismiss on the ground of double jeopardy was denied. On

---

6. Other cases have also distinguished *Halper*. *See Johnson v. State*, 95 Md.App. 561, 573–74, 622 A.2d 199, 205 (1993) ("*Halper* leaves undisturbed cases, such as the one at bar, that have found the revocation of voluntarily granted privileges to be civil in nature, not punitive, and merely remedial."); *Rogers*, 960 F.2d at 1507 ("Several courts have distinguished Halper as 'the rare case.'"); *Reed*, 937 F.2d at 577 ("*Halper* requires a comparison between the civil penalty and the government's loss resulting from defendant's conduct.").

appeal, Johnson, relying on *Halper*, contended that the latter prosecution constituted a multiple punishment for the same offense such that the prohibition against double jeopardy was violated.

The Court of Special Appeals first held that the administrative hearing was civil, not criminal, in nature. Although the court admitted that the statute did sanction offenders, it held that the administrative purpose was primarily to protect the public insofar as license revocation effectively deters drunk driving and reduces fatalities caused by drunk drivers awaiting criminal adjudication. Thus, the court concluded that Johnson was not "subject to criminal punishment for the same offense under the Double Jeopardy Clause." *Id.* at 573, 622 A.2d at 205.

In *Freeman v. State*, 611 So.2d 1260 (Fla. Dist. Ct.App.1992), *cert. denied*, —— U.S. ——, 114 S.Ct. 415, 126 L.Ed.2d 361 (1993), each of eleven petitioners were stopped for DUI, underwent breathalyzer tests, and registered blood alcohol content (BAC) levels over 0.10 percent. All were charged with DUI and had their licenses seized by the arresting officers. The petitioners, relying on *Halper*, alleged that each of their roadside license suspensions was punitive. The court summarily held that the purpose of the administrative revocation was to provide for public protection and not for punishment of the offender. *See also Gomez v. State*, 621 So.2d 578, 579 (Fla.Dist.Ct.App.1993) ("We entirely agree with ... *Freeman* ... that no double jeopardy violation is involved in the prosecution of a D.U.I. charge after the defendant's driver's license has been seized, because of the same conduct, by the arresting officer[.]").

In *State v. Strong*, 158 Vt. 56, 605 A.2d 510 (1992), Danny Strong's license was suspended due to a BAC reading of 0.16 percent, and Strong was subsequently convicted of DUI. On appeal, Strong claimed that the DUI prosecution constituted multiple punishments for the same conduct. In holding that double jeopardy was not violated, the court stated that "[t]he summary suspension scheme serves the rational remedial purpose of protecting public safety by quickly removing potentially dangerous drivers from the

roads." *Id.* at 61, 605 A.2d at 513. Furthermore, the court noted that, in cases examining the applicability of double jeopardy in these situations, "a 'bright line' has developed because the nonpunitive purpose of the license suspension is so clear and compelling." *Id.* at 62, 605 A.2d at 514; *see also State v. O'Brien*, 158 Vt. 275, 276, 609 A.2d 981, 982 (1992) (approving the holding in *Strong*); *City of Cleveland v. Nutter*, 68 Ohio Misc.2d 46, 646 N.E.2d 1209 (1995) (holding that driver's license suspension is a remedial action for public safety and not a punishment triggering a double jeopardy impediment); *City of Cleveland v. Miller*, 68 Ohio Misc.2d 52, 646 N.E.2d 1213 (1995) (agreeing with the reasoning in *Nutter*); *Butler v. Department of Pub. Safety & Corr.*, 609 So.2d 790 (La.1992) (holding that driver's license suspension is a remedial measure that does not violate the constitutional proscription against multiple punishments); *State v. Nichols*, 169 Ariz. 409, 819 P.2d 995 (Ct.App. 1991) (concluding that a motorist's double jeopardy rights were not violated by prosecution after a license suspension); *Ellis v. Pierce*, 230 Cal.App.3d 1557, 282 Cal.Rptr. 93 (1991) (holding that the driver's license suspension statute was neither a deterrent or retribution and had as its long range purpose the protection of public safety); *Schreiber v. Motor Vehicles Div.*, 104 Or.App. 656, 802 P.2d 706 (1990) (holding that proceedings to suspend driving privileges are not prosecutions for an offense), *review denied sub nom.*, *Schreiber v. MVD*, 311 Or. 266, 810 P.2d 855 (1991).

Based on the foregoing, we hold that Hawai'i's ADLRO proceedings serve legitimate, nonpunitive, and purely remedial functions, and, therefore, the administrative license revocation proceeding based on DUI did not bar Higa's subsequent criminal prosecution on the grounds of double jeopardy principles.

### 2. Res Judicata

Higa also contends that his DUI conviction violated the doctrine of res judicata, under which

[t]he judgment of a court of competent jurisdiction is a bar to a new action in any court between the same parties or their

privies concerning the same subject matter, and precludes the relitigation, not only of the [claims that] were actually litigated in the first action, but also of all grounds of claim [and defense that] might have been properly litigated in the first action but were not litigated or decided.

*State v. Magoon,* 75 Haw. 164, 190, 858 P.2d 712, 725 (citations and internal quotation marks omitted) (brackets in original), *reconsideration denied,* 75 Haw. 580, 861 P.2d 735 (1993); *see also Sussel v. Civil Service Commission,* 74 Haw. 599, 611, 851 P.2d 311, 317 ("[T]he basic tenet of res judicata [is] that the judgment of a court of competent jurisdiction is a bar to a new action in any court between the same parties or their privies concerning the same subject matter[.]" (Brackets and internal quotation marks omitted.)), *reconsideration denied,* 74 Haw. 650, 857 P.2d 600 (1993).

■ The doctrine of res judicata applies when three conditions are present: (1) the issue in the prior adjudication is identical to the present one; (2) there was a final judgment on the merits; and (3) the party against whom the doctrine is asserted was a party, or was in privity with a party, in the prior adjudication. *Morneau v. Stark Enterprises, Ltd.,* 56 Haw. 420, 424, 539 P.2d 472, 475 (1975); *see also Magoon,* 75 Haw. at 190–91, 858 P.2d at 725; *Santos v. State,* 64 Haw. 648, 653, 646 P.2d 962, 966 (1982). "The doctrines of res judicata and collateral estoppel also apply to matters litigated before an administrative agency." *Santos,* 64 Haw. at 653, 646 P.2d at 966 (citations omitted).

■ Higa claims that his argument should be addressed by the three criteria set forth in *Morneau* and approved by this court in *Magoon* and *Santos.* Assuming, but not agreeing that the *Morneau* test is appropriate in this case, Higa's arguments must fail. The burden of proof applicable to an ADLRO hearing is different than that of a criminal prosecution in that the former seeks to determine whether the defendant was DUI by a preponderance of the evidence, whereas the latter seeks to determine the same question

but beyond a reasonable doubt. Further, an ADLRO hearing is an administrative proceeding that serves a remedial function and is non-punitive. Finally, as Higa admits, the ADLRO officer and the prosecution are "not in privity *per se* " and "the prosecutors do not represent the government at the ADLRO."

■ Higa also relies on *State v. Alvey,* 67 Haw. 49, 678 P.2d 5 (1984), in support of his position that the ADLRO proceeding should bar a subsequent criminal proceeding on res judicata grounds. In *Alvey,* the question on appeal was whether a prison disciplinary committee's finding that there was insufficient evidence to punish an inmate for a prison infraction prevented the government from litigating the same issue in a subsequent criminal prosecution.

Noting the three factors enunciated in *Morneau* and *Santos,* the *Alvey* court stated, "we must go beyond the three factors cited in *Morneau* and *Santos* because those cases dealt only with previously litigated matters." *Id.* at 54, 678 P.2d at 8. Because the prosecution did not have the opportunity to litigate the issue of the inmate's criminal intent, the *Alvey* court enunciated and examined six factors; namely whether: (1) the issues in the prison and criminal charges were the same; (2) the hearing and trial procedures were similar; (3) the State had a fair and adequate incentive to litigate the charge; (4) the prison officials and the prosecutors were in privity; (5) the prison hearing decision amounted to a final judgment; and (6) the State, as a matter of policy, should be allowed to litigate an issue already decided by prison officials in the inmate's favor during a subsequent criminal prosecution arising out of the same incident. *Id.* at 55, 678 P.2d at 9.

Although the *Alvey* court concluded that the first five factors were equally weighted, it declined to analyze them, holding that the sixth factor weighed heavily against applying either res judicata or collateral estoppel to prison disciplinary committee findings because: (1) a resultant "logistical nightmare" would ensue; [7] (2) the functions of the prison

---

7. As this court explained in *Alvey,* "if a finding of innocence in a prison hearing precludes a crimi-

nal charge then the prison hearing will become the main focus of the criminal litigation. No

and criminal justice systems differ markedly; (3) the disciplinary committee's investigative ability is limited; (4) the penalties imposed by each system differ; and (5) the state has an interest in protecting the citizenry from those who commit prison crime. Therefore, the *Alvey* court determined that the finding of the prison disciplinary committee did not have res judicata or collateral estoppel effect.

Even if we were to apply the *Alvey* factors to the present case, they clearly weigh against Higa. The informal ADLRO hearing, before a hearings officer, is markedly dissimilar from the formality of a criminal proceeding before a judge, and, as previously noted, is subject to a different burden of proof. Furthermore, it is clear that the state did not have an adequate opportunity to litigate the DUI charge at the administrative level, nor, as Higa admits, did privity exist between the ADLRO and the prosecution. Most significantly, the final *Alvey* factor weighs heavily against Higa. As with prison disciplinary hearings, granting ADLRO proceedings preclusive effect would defeat the very purpose of the hearings insofar as the prosecution would then seek to intervene and fully litigate ADLRO hearings. Such a result would unnecessarily clog ADLRO hearings and prevent those proceedings from achieving their remedial goal—to protect the public by expeditiously removing potentially dangerous drivers from the state's highways. Because the legitimate remedial purpose is in the public's best interest and is fairly served by the ADLRO proceedings, Higa's res judicata arguments must fail.

### 3. Collateral Estoppel

■ "[C]ollateral estoppel is an aspect of res judicata which precludes the relitigation of a fact or issue [that] was previously determined in a prior suit on a different claim between the same parties or their privies." *Sussel,* 74 Haw. at 611, 851 P.2d at 317 (internal quotations and citations omitted).

In *State v. Walker,* 159 Ariz. 506, 768 P.2d 668 (1989), the issue was whether a city magistrate's finding of "not responsible" in Walker's civil traffic proceeding collaterally

estopped the state from prosecuting Walker for criminal felonies arising out of the same traffic occurrence. Because the constitutional basis of collateral estoppel in a criminal prosecution is based upon double jeopardy principles, the Arizona Court of Appeals held, as a threshold matter, that no constitutional basis for a double jeopardy challenge existed because only remedial sanctions, and not criminal sanctions, could have been imposed at the civil traffic proceeding. The lack of double jeopardy exposure thus foreclosed collateral estoppel as a matter of constitutional law.

The *Walker* court also rejected the application of collateral estoppel on a common law basis, noting that "[c]ollateral estoppel effect is generally denied to traffic convictions and minor offenses under accepted common law principles," *id.* at 509, 768 P.2d at 671 (citation omitted), because the state had not had a full and fair opportunity to litigate the issue as it would have in a criminal proceeding. As the *Walker* court of appeals stated,

> [t]o subject the state to issue preclusion from civil proceedings in an informal forum where it lacked incentive to litigate as fully as it would in a criminal forum would circumvent the legislature's purposes in creating the expedited dispositional procedures for civil traffic violations.

*Id.* at 508, 768 P.2d at 670. The court concluded that

> the application of the doctrine of collateral estoppel to the civil traffic judgment in this case is clearly unwarranted. We hold that a criminal defendant may not raise collateral estoppel as a bar to prosecution of a criminal felony offense when preclusion is alleged to result from a judgment of acquittal following a civil traffic hearing[.]

*Id.* at 510–11, 768 P.2d at 672–73; *see also State v. Young,* 3 Neb.App. 539, 530 N.W.2d 269 (1995) (holding that collateral estoppel does not require a criminal court to accept as binding an administrative proceeding's license revocation determination).

■ Having held that Higa's subsequent criminal prosecution is not barred by double

---

doubt the prosecutor will ask to intervene in serious cases and the disciplinary hearings will

become mini-trials." *Alvey,* 67 Haw. at 55, 678 P.2d at 9.

jeopardy principles, we reject Higa's constitutionally based collateral estoppel arguments. Moreover, because the prosecution did not have a full and fair opportunity to litigate in the ADLRO proceedings, Higa's common law based collateral estoppel arguments are also rejected.

## IV. CONCLUSION

Based on the foregoing, we hold that, in light of *Nakata*, Higa, as a first-time DUI offender, is not entitled to a jury trial. We also hold that, because Hawai'i's ADLRO proceedings serve legitimate, nonpunitive, and purely remedial functions, Higa's subsequent criminal prosecution is not barred by the principles of double jeopardy, res judicata, and/or collateral estoppel. Accordingly, we affirm Higa's conviction and sentence for DUI.