**Electronically Filed
Supreme Court
SCWC-16-0000833
03-JUN-2020
07:46 AM**

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---o0o---

STATE OF HAWAI'I,
Respondent/Plaintiff-Appellee,

vs.

JUSTIN K. BRIGHT,
Petitioner/Defendant-Appellant.

SCWC-16-0000833

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-16-0000833; FC-CR. NO. 16-1-0079)

JUNE 3, 2020

RECKTENWALD, C.J., NAKAYAMA, McKENNA, POLLACK, AND WILSON, JJ.

OPINION OF THE COURT BY RECKTENWALD, C.J.

Justin K. Bright was convicted of violation of a protective order for coming within 100 feet of the complainant ("the protected party") while at his place of work. The order

for protection prohibited Bright from, <u>inter alia</u>, coming within 100 feet of the protected party at a "neutral location." This case requires us to determine whether Bright's place of work was a "neutral location" under the terms of the order for protection. We hold that it was not.

The rule of lenity requires any ambiguous terms to be construed in favor of the defendant. Because "neutral location" is not defined by the order for protection and reasonable minds could disagree about its definition, it is ambiguous and therefore must be interpreted narrowly. We hold that in the context of this order for protection, "neutral location" means a place that is unaffiliated with either party. As Bright's place of employment was not a neutral location, he did not violate the order for protection and his conviction must be reversed.

## I.  BACKGROUND

On November 10, 2015, Bright consented to the entry of an order for protection that restrained him from having any contact with the protected party. The relevant terms of the protective order provided:

> B.    CONTACT BETWEEN THE PARTIES
>
> [1]   Respondent is prohibited from contacting the Petitioner.
>
> [2]   Respondent is prohibited from telephoning, writing or otherwise electronically communicating (by recorded message, pager, etc.), including through [a] third party, with the Petitioner and any children residing with the Petitioner.

2

[3]   Respondent is prohibited from coming or passing within 100 yards of any place of employment or where the Petitioner lives and within 100 feet of each other at neutral locations.  In the event the parties happen to come upon each other at a neutral location, the subsequent arriving party shall leave immediately or stay at least 100 feet from the other.  When the parties happen to come upon each other at the same time at a neutral location, the Respondent shall leave immediately or stay at least 100 feet from the Petitioner.

**Do not violate this order even if the Petitioner invites you to be at the place of employment or where the other lives.**

.  .  .  .

[4]   Other: Both parties are permitted to use Kuamoo Road to access their respective residences.

The order does not define the term "neutral location."

On April 15, 2016, the State of Hawai'i (State) charged

Bright with violating an order for protection, pursuant to

Hawai'i Revised Statutes (HRS) §§ 586-5.5[1] and 586-11(a)[2] (2018).

_____

[1]     HRS § 586-5.5 provides in relevant part:

(a)   If, after hearing all relevant evidence, the court finds that the respondent has failed to show cause why the [temporary restraining order] should not be continued and that a protective order is necessary to prevent domestic abuse or a recurrence of abuse, the court may order that a protective order be issued for a further fixed reasonable period as the court deems appropriate.

The protective order may include all orders stated in the temporary restraining order and may provide for further relief as the court deems necessary to prevent domestic abuse or a recurrence of abuse, including orders establishing temporary visitation and custody with regard to minor children of the parties and orders to either or both parties to participate in domestic violence intervention services.

[2]     HRS § 586-11(a) provides: "Whenever an order for protection is granted pursuant to this chapter, a respondent or person to be restrained who

The State alleged that on January 26, 2016, Bright encountered the protected party on the steps of the Fifth Circuit courthouse, in violation of the order for protection. On September 12, 2016, the family court held a bench trial. The following testimony was adduced at trial.

In mid-January 2016, Bright began working as a documents clerk at the Fifth Circuit courthouse. The protected party, who was a forensic social worker, had to go to the courthouse three to four times a week as part of her job. The Deputy Chief Court Administrator, Alton Amimoto, testified that Bright's job required him to start work promptly at 7:45 a.m., and that while new employees may have been allowed to park in the back of the courthouse and enter through the back door to avoid the public entrance at the front of the building, "[g]enerally, . . . all new employees park in the front and enter through the front entrance."

On the morning of January 26, 2016 – about a week after Bright started work – at approximately 7:40 a.m., the protected party and her father were "walking towards the court building to get in, and as [they] approached before the stairs, [she] noticed Justin [Bright] walking from the parking lot[.]"

---

knowingly or intentionally violates the order for protection is guilty of a misdemeanor."

When she reached the top of the stairs, Bright was about 20 feet away from her. She testified that when Bright was 12-15 feet away from her, approaching the stairs, "he looked right at me. He looked at my dad also. We were the only two people up there." The protected party and her father entered the courthouse and went through security. Bright did not speak to her during the encounter, and he did not follow her into the courthouse. Instead, he stopped outside the courthouse and stood at the top of the stairs about 10-12 feet away from the courthouse doors.

The protected party's father similarly testified that Bright came "between 12 and 15 feet" of the protected party. He agreed that Bright stopped at the top of the steps and did not enter the courthouse, and explained that instead of following them, Bright walked over to a short wall or bench and sat down.

Amimoto testified that at around 7:45 a.m., he saw Bright sitting in the front of the courthouse on a bench about 100 feet from the courthouse doors. When Amimoto approached, Bright told him that "he [Bright] had a problem." Bright "looked sad or unsure," and explained about the order for protection, telling Amimoto that "he saw [the protected party] going into the building so he wasn't sure what he should do." Amimoto then took Bright into the courthouse through the back

entrance.

Bright testified on his own behalf. He explained that he didn't see the protected party until he was 10-12 feet away from her because he had been on his phone while walking through the parking lot. He told the court, "I didn't know she was there until I – until I saw her and then I kind of panicked because it was already too late." When asked why he did not immediately leave, he testified:

> Well, I panicked at that time and I then I kind of like wasn't sure what to do because I still had to go to work and they were there, so I ended up kind of panicking for a little while and then walking away and I just stayed outside and was kind of unsure what to do.
>
> . . . .
>
> I mean, like I still had to go to work. I mean, being late – because I started working there, you know, being late on the first couple days isn't a good – good thing to do.

Bright did not know that the protected party would be at the courthouse that day: "I knew that she would eventually come here, yes. I assumed that I would be here before her because I'm a Judiciary – I was a Judiciary employee with different hours."

At the conclusion of trial, the family court found Bright guilty of violating the order for protection and sentenced him to two years of probation. The court discredited Bright's testimony that he did not see the protected party until

he was too close to her because the protected party and her father were the only other people walking into the courthouse at the time. Although Bright had argued that the courthouse was not a "neutral location" because it was Bright's place of work, the family court never made an explicit finding whether the courthouse constituted a "neutral location" under the terms of the order for protection. However, the parties agree on appeal that the family court implicitly determined Bright's place of employment was a "neutral location" because the family court held that Bright had two options: "One is he could have remained at a distance, the hundred feet is what the protective order said, or he could have left because they were there first."

Bright appealed to the Intermediate Court of Appeals (ICA), arguing that the courthouse was not a "neutral place" because it was Bright's place of employment.[3] The State conceded that "there is more than one reasonable way to interpret" the term "neutral location," but argued that if the court found that "neutral location" did not include Bright's workplace, only his office – not the entire building – would have been exempted from the terms of the protective order.

The ICA affirmed Bright's conviction in a summary

---

[3] Bright raised several additional points of error to the ICA, but he raised only the "neutral location" issue in his application for writ of certiorari.

disposition order.  While the ICA agreed with Bright that "[t]he outside parameters of the prohibitions contained in the Order for Protection are less than perfectly clear," the ICA concluded that "there was substantial evidence that Bright came within both 100 feet of the complaining witness at a 'neutral location,' and 100 yards at 'any place of employment.'  In either case then, Bright's stated surprise at encountering the complaining witness notwithstanding, his action was in violation of the Order for Protection."

Bright timely filed an application for writ of certiorari.

## II.  STANDARD OF REVIEW

"The interpretation or construction of a judgment, decree, or order 'presents a question of law for the courts.'" State v. Guyton, 135 Hawaiʻi 372, 377, 351 P.3d 1138, 1143 (2015) (quoting Cain v. Cain, 59 Haw. 32, 39, 575 P.2d 468, 474 (1978)). "Questions of law are reviewed under the right/wrong standard of review."  Id. (citing State v. Higa, 79 Hawaiʻi 1, 3, 897 P.2d 928, 930 (1995)).

## III.  DISCUSSION

An order for protection must be "clear and unambiguous" because "fairness and due process dictate that a court order must be sufficiently particular and definite so as

to clearly identify the conduct that it prohibits." Id. at 377–78, 351 P.3d at 1143–44 (quoting LeMay v. Leander, 92 Hawai'i 614, 625, 994 P.2d 546, 557 (2000)). If an order for protection is ambiguous, under the rule of lenity, it must be "construed in favor of the defendant." Id. at 381, 351 P.3d at 1147.

The stay-away provision of the order for protection against Bright states:

> Respondent is prohibited from coming or passing within 100 yards of any place of employment or where the Petitioner lives and within 100 feet of each other at neutral locations. In the event the parties happen to come upon each other at a neutral location, the subsequent arriving party shall leave immediately or stay at least 100 feet from the other. When the parties happen to come upon each other at the same time at a neutral location, the Respondent shall leave immediately or stay at least 100 feet from the Petitioner.

The order also provides an exception: "Both parties are permitted to use Kuamoo Road to access their respective residences." Thus, the order for protection identifies three categories of locations: (1) a residence, which includes Bright's home as well as the protected party's, (2) "any place of employment," and (3) "neutral locations." It restrains Bright from coming within 100 yards of the protected party's residence and her place of employment (the 100-yard prohibition). It also requires him to stay 100 feet away from her at "neutral locations" (the 100-feet prohibition) – but the order does not define what constitutes a "neutral location."

**A.  The ICA Erred in Concluding that Regardless of How the Court Interprets the Phrase "Neutral Location," Bright Violated the Order for Protection.**

The ICA concluded that even if the 100-feet prohibition did not apply to Bright's place of employment, he still violated the order for protection because he came within 100 yards of the protected party at a place of employment. According to the ICA, the 100-yard prohibition restrained Bright from coming within 100 yards of the protected party if the parties were at any place of employment – including his own. This misreads the protective order.

The 100-yard prohibition restrains Bright from coming within 100 yards of two <u>locations</u> – "[1] any place of employment or [2] where the Petitioner lives" – not within 100 yards of the protected party <u>at</u> those locations.  In other words, Bright could not go to the protected party's place of employment, even if she was not there, because he could not go within 100 yards of the place.  The phrase "any place of employment or where Petitioner lives," when read in context, must refer to the protected party's place of employment – not Bright's.  If the term referred to Bright's place of employment it would create an absurd result:  He would be restrained from coming within 100 yards of his own place of work.

Moreover, Bright could not have been convicted of

10

violating the 100-yard prohibition because the State did not allege he violated that provision of the order for protection when it filed a Bill of Particulars prior to trial.  In the Bill of Particulars, the State only alleged that Bright came within 100 feet of the protected party, and so that was the only conduct for which Bright could have been convicted of violating the order for protection.  See State v. Erickson, 60 Haw. 8, 9, 586 P.2d 1022, 1023 (1978) ("After a bill of particulars is ordered furnished and is filed by the State and until it is properly amended, the State is limited to proving the particulars specified in the bill.").

Thus, the ICA erred in concluding that regardless of how the language in the order for protection is interpreted, Bright violated the order.  Bright was convicted of being within 100 feet of the protected party.  Such conduct would only be a violation of the order for protection if Bright's place of employment – the Fifth Circuit courthouse – is deemed a "neutral location."

**B.  Because the Order for Protection is Ambiguous, It Must be Construed in Favor of Bright.**

Bright argues that the plain meaning of "neutral" should govern, and "the plain common sense reading of the Order for Protection is that either party's place of employment or place of residence is not a neutral location."  While he

11

contends that the order for protection is not ambiguous, he asserts that even if this court deems the term "neutral location" to be ambiguous, the rule of lenity requires the term be strictly construed in favor of Bright.

The State also contends that the order for protection is not ambiguous, but reaches a different conclusion as to the meaning of "neutral location": "Because [Bright's] place of employment is not specifically addressed in the Protective Order, the only reasonable interpretation of the Protective Order it [sic] that it is a neutral location to which the default rule applied[.]"[4]

If language is "subject to two possible meanings," both of which are reasonable, it is ambiguous. State v. Fukusaku, 85 Hawaiʻi 462, 491, 946 P.2d 32, 61 (1997); see also State v. Toyomura, 80 Hawaiʻi 8, 19, 904 P.2d 893, 904 (1995)("When there is doubt, doubleness of meaning, or indistinctiveness or uncertainty of an expression used in a statute, an ambiguity exists." (quoting Mehau v. Reed, 76 Hawaiʻi 101, 109, 869 P.2d 1320, 1328 (1994)) (alteration omitted)).

Here, the 100-feet provision of the order for protection is ambiguous. Specifically, it is unclear whether a

---

[4]     However, as noted above, in its Answering Brief to the ICA, the State conceded that "there is more than one reasonable way to interpret 'neutral location[.]'"

"neutral location" refers to: (1) all locations that are not the protected party's residence or place of employment, as the State now argues, or (2) locations that are unaffiliated with either party, as Bright argues.[5]  Contrary to both parties' assertions, either interpretation could be reasonable.  In the face of an ambiguity, we turn to traditional canons of construction to guide our interpretation.

In State v. Guyton, we explained that if an order for protection is ambiguous, in accordance with the rule of lenity "its language should be construed in favor of the defendant." 135 Hawai'i at 381, 351 P.3d at 1147.  In Guyton, the defendant was convicted of violating a protective order that restrained him from entering the protected party's "residence, including yard" which the State had interpreted as including the protected party's 1,000-acre macadamia nut farm and conservation land. This court held that the protective order needed to be "clear and unambiguous," and that "residence, including yard" should be

_____

[5]     Other form orders for protection have approached general stay-away provisions differently, suggesting that the language used here may be the exception, not the rule.  See, e.g., State v. Valenzona, 92 Hawai'i 449, 450, 992 P.2d 718, 719 (App. 1999) (prohibiting "visiting and/or remaining . . . within 100 feet of the Plaintiff at all other (neutral) locations").  For example, the Hawai'i Family Court of the First Circuit Temporary Restraining Order form specifies, "Do not approach or come within **100 feet** of the Subject(s)."  Temporary Restraining Order, Family Court Form 1F-P-756, https://www.courts.state.hi.us/docs/1FP/1FP756.pdf (last visited March 2, 2020) (bold in original); see also Temporary Restraining Order, Family Court Form 3F-P-303, https://www.courts.state.hi.us/docs/form/hawaii/3FP303.pdf (last visited March 2, 2020).

given its ordinary meaning, which did not encompass the protected party's entire 1,000-acre property. Guyton, 135 Hawai'i at 377-78, 351 P.3d at 1143-44. We noted that even if the terms were ambiguous, under the rule of lenity, the "plain and popularly understood meaning" had to control. Id. at 381, 351 P.3d at 1147. Here, we apply the rule in Guyton to hold that "neutral location" should be given its ordinary meaning.

The State argues that Guyton is inapplicable because the defendant in that case did "not violate the spirit of a protective order, which typically prohibits in-person contact within 100 yards or 100 feet." Since Bright came within 100 feet of the protected party, the State contends that his actions "violate[d] both the terms and the spirit of the Protective Order."

We disagree with the State's interpretation of Guyton. At no point did we consider whether the defendant in Guyton violated the "spirit" of the protective order – the only question was whether he violated the terms of the order, as interpreted by their plain meaning and in accordance with the rule of lenity. Id. at 381, 351 P.3d at 1147. Even if we were to assume that the facts of this case demonstrate Bright violated the spirit of the order for protection, the spirit of the order cannot override its terms. And, for the reasons

explained below, Bright did not violate the terms of the order for protection.

**C.    In Accordance with the Rule of Lenity, a "Neutral Location" is a Place that is Unaffiliated with Either Party.**

The rule of lenity requires us to construe an ambiguous court order in favor of the defendant and "adopt a less expansive meaning." State v. Woodfall, 120 Hawai'i 387, 396, 206 P.3d 841, 850 (2009).  Here, the narrowest interpretation of "neutral location" is also the term's plain and popularly understood meaning.  See Guyton, 135 Hawai'i at 381, 351 P.3d at 1147.

To ascertain a word's plain meaning, we "may resort to legal or other well accepted dictionaries[.]"  State v. Pali, 129 Hawai'i 363, 370, 300 P.3d 1022, 1029 (2013) (quoting State v. Kikuta, 125 Hawai'i 78, 96, 253 P.3d 639, 658 (2011)) (internal quotation marks omitted); see also Guyton, 135 Hawai'i at 378, 351 P.3d at 1144 (using Oxford Dictionaries and the Merriam-Webster Dictionary to ascertain the plain meaning of "residence").  Merriam-Webster's Dictionary defines neutral as "not engaged on either side."  Neutral (adj.), Merriam-Webster's Collegiate Dictionary (11th ed. 2009) (emphasis added). Similarly, the Oxford English Dictionary defines "neutral" as "[n]ot belonging to, associated with, or favoring any party or side," and "[b]elonging to, or falling under, neither of two

specified, implied, or usual categories; occupying a <u>middle position</u> with regard to two extremes."[6]  Neutral (adj.), <u>Oxford English Dictionary Third Ed.</u> (Sept. 2003) (emphasis added).  The common thread between these definitions is that something is neutral if it is unaffiliated with either side of a dispute.  Thus, the "plain and popularly understood meaning" of "neutral location" in this context means a place that is unaffiliated with either of the parties.  Therefore, locations affiliated with Bright – such as his place of employment – are not neutral locations.

Our interpretation is consistent with the other provisions of the order for protection.  Locations affiliated with the protected party – her residence and place of employment – are clearly not considered neutral locations, as the order applies a separate prohibition to both those locations:  Bright may not go within 100 yards of those places.  Similarly, the order implicitly refers to Bright's residence - "[b]oth parties are permitted to use Kuamoo Road to access their respective residences" - suggesting that it, too, is not a "neutral location."  If the protected party's residence and place of employment are not neutral locations, and Bright's residence is

---

[6]     Black's Law Dictionary similarly defines "neutral" as "[n]ot supporting <u>any</u> of the people or groups involved in an argument or disagreement[.]"  NEUTRAL (adj.), <u>Black's Law Dictionary</u> (11th ed. 2019) (emphasis added).

16

not a neutral location, it follows that Bright's place of employment is not a neutral location either. Accordingly, Bright did not violate the order for protection by being within 100 feet of the protected party at his place of employment, and his conviction must be reversed.[7]

### IV.   CONCLUSION

Because we conclude that the term "neutral location" in the order for protection at issue was ambiguous, under the rule of lenity it must be construed in Bright's favor and in accordance with its ordinary meaning. Thus, "neutral location," as used in the order for protection at issue, means a location that is unaffiliated with either party. Because Bright's workplace was not a neutral location, Bright did not violate the order for protection. Accordingly, we vacate the ICA's judgment

---

[7]      Even if the 100-feet prohibition did not apply at Bright's workplace, the rest of the order remained enforceable and provided protection to the protected party at the Fifth Circuit courthouse. Thus, regardless of the parties' location, Bright could not have "any contact" with the protected party, could not "threaten[] or physically abus[e]," the protected party, or "maliciously damage any property of the [protected party] or property of the [protected party's] household." But here, there was no allegation that Bright contacted the protected party, only that he came within 100 feet of her.

on appeal filed August 1, 2019, and remand to the family court

for entry of a judgment of acquittal.

| | |
|---|---|
| Emmanuel G. Guerrero<br>for petitioner | /s/ Mark E. Recktenwald |
| | /s/ Paula A. Nakayama |
| Tracy Murakami<br>for respondent | /s/ Sabrina S. McKenna |
| | /s/ Richard W. Pollack |
| | /s/ Michael D. Wilson |

