STATE OF HAWAII, Plaintiff-Appellant, *v.* MICHELLE MARGARET ALVEY, also known as Tania Bennett, Defendant-Appellee

NO. 9080

(CRIMINAL NO. 56747)

FEBRUARY 15, 1984

NAKAMURA, ACTING C.J., PADGETT, HAYASHI, AND WAKATSUKI, JJ., AND INTERMEDIATE COURT OF APPEALS ASSOCIATE JUDGE HARRY T. TANAKA IN PLACE OF LUM, C.J., RECUSED

## OPINION OF THE COURT BY HAYASHI, J.

This case raises the question whether a finding by a prison disciplinary committee that insufficient evidence existed to punish an inmate for a prison infraction collaterally estops the State from litigating the same issue in a subsequent criminal prosecution. We conclude prison disciplinary committee findings do not have collateral estoppel or *res judicata* effect on subsequent criminal prosecutions and therefore reverse.

In 1981 Michelle Alvey was a prisoner at Oahu Community Correctional Center (OCCC). On November 16, 1981, a prisoner passed heroin and marijuana to Alvey to pass on to another prisoner. Alvey threw the drugs away. Conchita Nobel, a prison guard, saw Alvey throw away the drugs and retrieved them.

On November 28, 1981, Alvey received two "Notice of Report of Misconduct" notices, informing her that she had been reported for two counts of possession of unprescribed drugs, a violation of § 200.210.003(21) of the Rules and Regulations of the Corrections Division, Hawaii Department of Social Services and Housing (June 1979) (Prison Rules), and that the charges would be heard by the prison Adjustment Committee (disciplinary committee) on December 3, 1981. Prison officials also reported the incident to the Honolulu Police Department (HPD), but not to the county prosecutor's office.

A prison investigator, Linda Moga, was assigned to investigate the Alvey incident pursuant to § 200.220.002 of the Prison Rules.[1] Testimony revealed that the investigator is a neutral party who tries to find out what happened and then presents the facts to the disciplinary committee. She can call and examine witnesses.

The disciplinary hearings provide a modicum of due process guarantees. The inmate has the right to notice, to appear, to enter a

---

[1] Section 200.220.002 reads:

A staff member should conduct a complete investigation into the facts of the alleged misconduct to determine if there is probable cause to believe the inmate/ward committed misconduct. If in his discretion, he finds sufficient cause to believe that a rule violation has occurred, the following procedures may be initiated. Additionally, the pre-hearing investigator may present the evidence against the inmate/ward to the adjustment committee.

plea, to be present when non-confidential evidence is presented, to cross-examine adverse witnesses unless security would be threatened, to present exculpatory evidence and call witnesses on her behalf, to be assisted by counsel, and to receive a written summary of the disciplinary committee's findings. Prison Rules § 200.220.003 — .005.

Alvey's hearing was held on December 3, 1981. The disciplinary committee was composed of Lieutenant John Manumaleuna, Sergeant Chester Drake, both prison guards, and Mr. Dale Haga. Haga's position is not clear from the record. Alvey was represented by Ed Tsuji, a Legal Aid lawyer, and pled not guilty. Noble had moved to the Mainland so her written report was read into the record, over Tsuji's objections. Moga took longhand notes but a verbatim transcript was not kept.

Moga testified that Alvey did not want to get in trouble with the prison administration or the other prisoners because she was close to release, so she threw away the drugs rather than pass them on. The disciplinary committee, apparently concluding that Alvey had the drugs in her possession involuntarily, found there was insufficient evidence to prove Alvey knowingly possessed the contraband and dismissed the charges against her. Had Alvey been convicted she could have appealed the decision to a higher administrative official within fourteen days. Prison Rules § 200.220.007. She also could have been confined up to sixty days, could have lost her privileges, and could have been reclassified, endangering her probation status. Prison Rules § 200.220.006.

On February 25, 1982, the county prosecutor's office brought charges against Alvey and the Oahu grand jury indicted her for Promoting Prison Contraband, First Degree.[2] On December 9, 1982, Alvey moved to dismiss the indictment on the ground that the issue of her knowing possession had already been decided in her favor by the prison disciplinary committee. On December 10, 1982, the lower court dismissed the indictment with prejudice on two

---

[2] "A person commits the offense of promoting prison contraband in the first degree if: being a person confined in a correctional or detention facility, he intentionally makes, obtains, or possesses a dangerous instrument or drug." HRS § 710-1022(1)(b) (1976).

alternative grounds: (1) dismissal of the prison charge collaterally estopped the criminal charge; and (2) dismissal of the criminal charge was within his inherent power under the common law and HRS § 603-21.9 (1976).

The trial judge concluded that collateral estoppel applied due to eight procedural similarities between the prison hearing and a criminal trial: (1) the charges were the same, (2) Alvey was represented by an attorney, (3) the hearing was adjudicatory, (4) Alvey pled not guilty, (5) Alvey was subject to punishment if found guilty, (6) the prison officials could summon witnesses, (7) the board issued a written decision finding insufficient evidence to support the charge; and (8) the prison officials were representatives of the State and were in privity with the prosecutor's office. Addressing his inherent power, the judge also dismissed the indictment because he felt the court should not meddle in prison affairs by retrying an inmate who had already been absolved by prison officials under a lesser burden of proof. Furthermore, the judge felt that judicial economy supported giving the prison hearing *res judicata* effect. We disagree on both grounds and reverse.

## I. COLLATERAL ESTOPPEL

The *res judicata* or collateral estoppel effect of a prison disciplinary hearing is a case of first impression in Hawaii. In *Morneau v. Stark Enterprises Ltd.,* 56 Haw. 420, 539 P.2d 472 (1975), this court noted three critical issues in determining whether collateral estoppel or *res judicata* should apply to previously litigated matters:

(1) Was the issue decided in the prior adjudication identical with the one presented in the action in question?

(2) Was there a final judgment on the merits?

(3) Was the party against whom the plea is asserted a party or in privity with a party to the prior adjudication?

*Id.* at 424; 539 P.2d at 475 (quoting *Bernhard v. Bank of America,* 19 Cal. 2d 807, 813, 122 P.2d 892, 895 (1942) ).

In *Santos v. State,* 64 Haw. 648, 653, 646 P.2d 962 (1982), we stated that these same issues usually determine whether estoppel principles apply to matters litigated before an administrative

agency.[3] To decide the present case, however, we must go beyond the three factors cited in *Morneau* and *Santos* because those cases dealt only with previously litigated matters. Here the State contends it never had the opportunity to litigate the issue of Alvey's criminal intent. In addition, a critical policy question arises when deciding whether to give *res judicata* or collateral estoppel effect to quasi-judicial administrative hearings.[4] The discussion in the RE-STATEMENT (SECOND) OF JUDGMENTS is a helpful supplement to the *Morneau/Santos* list of issues:

> The first consideration is procedural. The essential issue is a comparison of the quality and intensiveness of the opportunity to litigate, and the incentive to litigate, in the original litigation as compared to the opportunity and incentive in the second litigation. . . . Assuming that the procedural opportunity afforded in the original action warrants normal application of the rules of *res judicata*, a second consideration arises. That consideration is whether extrinsic policies indicate that the second forum should nevertheless examine the matter in question anew. These policies concern the relative competence and responsibility of the two forums, for example, as between an administrative agency and a court.

RESTATEMENT (SECOND) OF JUDGMENTS, preface to § 83 at p.265 (1982).

---

[3] One problem with this case is that it is not clear whether the prison disciplinary committee is an administrative or a judicial body. Moga testified that the hearings are generally considered administrative proceedings but the inquisitional nature of the hearings appears quasi-judicial. We do not find it necessary, however, to resolve this question because as indicated by *Morneau* and *Santos* the nature of the decision-making body is not determinative of whether estoppel principles should apply; rather, it is the nature and purpose of the proceedings which control. *See, Evans v. Monahan,* 306 N.Y. 312, 118 N.E.2d 452, 457-58 (1954); DAVIS, 2 ADMINISTRATIVE LAW TREATISE § 18.03 at 558-61 (1958).

[4] Our opinion should not be read to indicate any change from our statement in *Santos* that, generally speaking, matters litigated before an administrative agency will be given *res judicata* and collateral estoppel effect. 64 Haw. at 653, 646 P.2d at 966. *Santos* involved a contested case heard by the Hawaii Public Employees Relations Board. Prison administrative hearings, on the other hand, are not contested cases within the meaning of HRS § 91-1(5) of the Hawaii Administrative Procedure Act. *Lono v. Ariyoshi,* 63 Haw. 138, 146, 621 P.2d 976 (1981); *Tai v. Chang,* 58 Haw. 386, 388, 570 P.2d 563 (1977).

Thus, we find the following factors to be determinative of whether prison disciplinary committee findings should be given collateral estoppel effect against the State in a subsequent criminal prosecution:

(1) Were the issues in the prison and criminal charges the same?

(2) Were the hearing and trial procedures similar?

(3) Did the State have a fair opportunity and adequate incentive to litigate the charge?

(4) Were the prison officials and prosecutors in privity?

(5) Was the prison hearing decision a final judgment?

(6) Should the State as a matter of policy be allowed to litigate an issue, already decided by prison officials in the inmate's favor, during a subsequent criminal prosecution arising out of the same incident?

We conclude that the five procedural factors are weighted almost equally in favor of and against collateral estoppel. We do not analyze them, however, because the policy factor weighs heavily against applying either *res judicata* or collateral estoppel to prison disciplinary committee findings.

Making prison disciplinary findings conclusive would cause a logistical nightmare. As the Attorney General points out in its *amicus* brief, if a finding of innocence in a prison hearing precludes a criminal charge then the prison hearing will become the main focus of the criminal litigation. No doubt the prosecutor will ask to intervene in serious cases and the disciplinary hearings will become mini-trials. This may be desirable in most administrative contexts, but would clog the prison discipline system and defeat its main purpose of summarily maintaining prison order.[5]

Moreover, the purposes of the prison discipline and criminal justice systems differ markedly. "Prison disciplinary proceedings are not part of a criminal prosecution," *Wolff v. McDonnell,* 418 U.S. 539,

---

[5] Disciplinary hearings are generally held within five days of the incident if the inmate is detained. Prison Rules § 200.220.001. Only twenty-four hours prior notice to the inmate is required. Prison Rules § 200.220.003. Alvey's hearing was held seventeen days after the incident but only five days after she received notice. This summary proceeding is sufficient for maintaining prison order but insufficient for a mini-trial.

556 (1974), and "involve the correctional process and important state interests other than conviction for crime." *Baxter v. Palmigiano,* 425 U.S. 308, 319 (1976). The disciplinary committee's objective is to maintain prison order and discipline. *See,* Prison Rules § 100.130 and § 200.210.001. In contrast, criminal proceedings are intended, among other objectives, to ascertain guilt or innocence, to punish offenders, and to protect the public from those who break the law. Giving collateral estoppel effect to prison disciplinary hearings would frustrate these objectives and lead to some very undesirable results.

The disciplinary committee's investigative ability is limited. Without subpoena, plea bargaining, protection, or immunity power the prison investigator does not have the discovery leverage of a prosecutor:

> The reality is that disciplinary hearings and the imposition of disagreeable sanctions necessarily involve confrontations between inmates and authority and between inmates who are being disciplined and those who would charge or furnish evidence against them. Retaliation is much more than a theoretical possibility; and the basic and unavoidable task of providing reasonable personal safety for guards and inmates may be at stake, to say nothing of the impact of disciplinary confrontations and the resulting escalation of personal antagonisms on the important aims of the correctional process.

*Wolff v. McDonnell,* 418 U.S. at 562. The outcome of a trial might be quite different from the disciplinary committee's findings because the prosecutor can offer potential witnesses immunity or protection from reprisal which the prison investigator cannot.

The penalties imposed by each system also demonstrate their differences. For example, a prison disciplinary board may impose on a prison murderer only sixty days of confinement, loss of privileges, possible reclassification, and "any other punishment deemed necessary." Prison Rules § 200.210.006. These administrative sanctions are hardly an effective deterrent to intentional homicide. Criminal prosecution, on the other hand, may result in a life sentence. HRS § 706-606 (1976 and Supp. 1983). Even less serious prison crime, if it demonstrates the inmate is a repeat offender under HRS § 706-606.5, or a persistent or multiple offender under HRS § 706-662, can qualify the inmate for an ex-

tended sentence of three years to life. HRS § 706-606.5 (Supp. 1983); HRS § 706-661 (1976).

Finally, the State has an interest in protecting its citizens from those who commit prison crime. While prison crimes generally affect prisoners rather than society, criminal activity no matter where it occurs demonstrates a disregard for the law. Successful prosecution of prison crime will help to ensure that those who continue to commit crime while in prison will remain confined and insulated from the public. We therefore find the trial court erred in dismissing Alvey's indictment on collateral estoppel grounds.

## II. THE TRIAL JUDGE'S INHERENT POWER TO DISMISS THE INDICTMENT

In *State v. Moriwake*, 65 Haw. 47, 647 P.2d 705 (1982), this court held the trial court had the inherent power to dismiss an indictment with prejudice after two mistrials. In defining the court's inherent power, this court stated that power included "the power to administer justice. . . ." *Id.* at 55, 647 P.2d at 712. The exercise of inherent power "is a matter of balancing the interest of the State against fundamental fairness to a defendant with the added ingredient of the orderly functioning of the court system." *Id.* at 56, 647 P.2d at 712.

Alvey has not cited a single authority for the proposition that a trial judge has the inherent power to dismiss an otherwise valid indictment prior to the defendant's first trial. Nor could we, for a judge's inherent power to dismiss an indictment is not so broad. Within the federal system,

> a federal court is empowered to dismiss an indictment on the basis of governmental or prosecutorial misconduct. . . . However, such supervisory power will be used to dismiss an indictment only when the misconduct represents 'a serious threat to the integrity of the judicial process.'

*United States v. Everett*, 692 F.2d 596, 601 (9th Cir. 1982); *see also, United States v. Samango*, 607 F.2d 877 (9th Cir. 1979). Other state courts require a "clear denial of due process," *People v. Miller*, 100 Ill. App. 3d 122, 426 N.E.2d 609, 614 (1981), evidence some constitutional right has been violated, *State v. Gaffey*, 92 N.J. 374,

456 A.2d 511, 515 (1983), arbitrary action, or governmental misconduct. *State v. Dailey,* 93 Wash. 2d 454, 610 P.2d 357, 359 (1980).

Alvey does not assert any misconduct or contend that she has been denied due process. Instead, the indictment was dismissed for reasons of comity and judicial economy. We have already indicated that a subsequent criminal trial will not meddle in prison disciplinary matters; on the contrary, it will leave prison officials free to conduct summary proceedings tailored to the limited sanctions involved. Judical economy is also not a legitimate reason to dismiss an indictment prior to a defendant's first trial. Except where *Moriwake*-type considerations apply, dismissing an indictment just to ease a crowded docket is an abuse of discretion. *People v. Jones,* 93 A.D.2d 743, 461 N.Y.S.2d 293 (1983).

In bringing criminal charges against Alvey the State's interest is to prosecute prison crime. It is a strong interest. In *Moriwake* the judicial interest in preventing a third trial at which no new evidence would be presented, combined with fairness to the defendant, outweighed the State's interest in prosecution. Here, a trial will not waste judicial resources nor deny Alvey fair treatment.[6] We therefore hold that the trial judge abused his discretion in using his inherent power to dismiss the indictment.

The indictment is reinstated.

*Arthur E. Ross,* Deputy Prosecuting Attorney, for appellant.

*Loralyn Cramer (Randal G. Valenciano* on the brief), Deputy Public Defenders, for appellee.

On the Amicus Curiae brief: *James H. Dannenberg,* Deputy Attorney General, for the Hawaii Department of Social Services and Housing.

---

[6] While there are serious questions about Alvey's criminal intent, they are for the trier of fact to decide. 21 AM. JUR. 2d *Criminal Law* § 129 (1981).