LAW LIBRARY

**FOR PUBLICATION IN WEST'S HAWAI'I REPORTS AND PACIFIC REPORTER**

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

---oOo---

STATE OF HAWAI'I, Plaintiff-Appellant,
vs.
KYLE F.K. CORREA, Defendant-Appellee

NO. 29817

APPEAL FROM THE FAMILY COURT OF THE FIRST CIRCUIT
(FC-CR NO. 08-1-1900)

AUGUST 27, 2010

NAKAMURA, CHIEF JUDGE, FUJISE, and GINOZA, JJ.

OPINION OF THE COURT BY NAKAMURA, C.J.

Defendant-Appellee Kyle F.K. Correa (Correa) was charged by complaint with abuse of a family or household member, in violation of Hawaii Revised Statutes (HRS) § 709-906 (Supp. 2009).[1] The alleged victim and the complainant (Complainant) was Correa's wife.

At a calender call held on the day scheduled for trial, the Family Court of the First Circuit (family court)[2] denied Correa's motion for a trial continuance. The Deputy Prosecuting Attorney (DPA) advised the family court that Plaintiff-Appellant

---

[1] HRS § 709-906 provides in relevant part:

(1) It shall be unlawful for any person . . . to physically abuse a family or household member . . . .

For the purposes of this section, "family or household member" means spouses or reciprocal beneficiaries, former spouses or reciprocal beneficiaries, persons who have a child in common, parents, children, persons related by consanguinity, and persons jointly residing or formerly residing in the same dwelling unit.

[2] The Honorable Patrick W. Border presided over the proceedings relevant to this appeal.

State of Hawai'i (State) was ready to proceed with trial. At a bench conference, the family court asked the DPA if he had personally spoken with the Complainant. The DPA acknowledged that he had not. After the bench conference, the DPA again represented that the State was ready to proceed with trial, and he advised the family court that he had "right now" talked to the Complainant. The family court ruled that because the DPA in preparation for trial had not spoken "in detail" with the Complainant, "the State cannot be heard to say that it's ready for trial." Based on this ruling, the family court dismissed the abuse charge against Correa with prejudice.

The State appeals from the family court's "Order of Dismissal with Prejudice (Dismissal Order), which was filed on April 13, 2009. We hold that the family court abused its discretion in dismissing the abuse charge against Correa. Accordingly, we vacate the family court's Dismissal Order and remand the case for further proceedings.

BACKGROUND FACTS

On August 28, 2008, Correa was charged with abusing the Complainant, who was a family or household member. On October 1, 2008, the State filed a "Notice of Intent to Use Evidence" (Notice of Intent), which notified Correa of the State's intent to use evidence of a prior incident in which he allegedly abused the Complainant as well as two incidents of alleged burglary committed by Correa involving other complaining witnesses. With respect to the prior incident of alleged abuse, the State attached a police report that contained a written statement, signed by the Complainant, which stated that Correa had slammed the Complainant's head against the passenger window of a truck, pulled her hair, hit her head against the truck's middle console, choked her, and dragged her out of the truck. The State asserted that it intended to use the evidence proffered in its Notice of Intent "to explain the possible recantation" of the Complainant at trial or "to rebut [Correa's] first aggressor self-defense . . . ."

2

On December 4, 2008, Correa filed a notice that the Office of Public Defender was withdrawing as his counsel and that new counsel was being substituted and was appearing for Correa. Trial was continued to January 20, 2009, and then to February 17, 2009. At a calendar call held on February 17, 2009, Correa orally moved for a continuance to enable the defense to determine the outcome of another matter for which Correa had been placed in custody. The family court continued the trial to April 13, 2009, but advised the parties that this would be the "[l]ast continuance for everyone" absent something "extraordinary."

On April 3, 2009, Correa filed a motion to continue the trial. In support of the motion, Correa's counsel asserted that: 1) on February 6, 2009, Correa was arrested for, and was subsequently charged with, first degree methamphetamine trafficking; 2) Correa had been accepted into a residential substance abuse program scheduled to begin on April 14, 2009; and 3) Correa was asking for a continuance of at least ninety days to permit him to enter and complete the substance abuse program.

On April 13, 2009, the scheduled date for trial, a hearing on a calendar call and on Correa's motion for a continuance was held. At the outset of the hearing, the family court asked both parties if they were ready for trial, and then it proceeded to consider and deny Correa's motion for a continuance of trial:

> THE COURT: Okay. State's ready?
>
> [DPA]: Uh, Your Honor, for this case State is ready to proceed.
>
> THE COURT: Defense?
>
> [DEFENSE COUNSEL]: Your Honor, defense is asking for a continuance. Uh, we did file a motion to continue. Mr. Correa is set to enter into a treatment program tomorrow. That is a residential program that he cannot leave for a period of --
>
> THE COURT: Okay. Would you join me up here.
>
> (Bench conference begun.)
>
> THE COURT: When, uh -- when did he get admitted to that program?

[DEFENSE COUNSEL]: March 30th.

THE COURT: Because I designated it as a final continuance in February.

[DEFENSE COUNSEL]: I remember you saying that.

THE COURT: Yeah.

[DEFENSE COUNSEL]: But, uh, I think (inaudible), Your Honor. He has two things going on. One, he has the drug treatment. Two, he has a Circuit Court methamphetamine trafficking case that's set for the end of the month.

THE COURT: Okay. We're not -- I've -- I've said -- because we're trying to go with the rule of reason that we give some leeway. But this case has gone on -- let me see this one. Um, it's -- the first calendar call was last October which means that just from calendar calls that period is six months old. So the motion to continue is denied.

After denying Correa's motion to continue the trial, the family court advised defense counsel that Correa would be required to appear at the "calendar call tomorrow at . . . 8:30." The family court then questioned the DPA about whether he had personally spoken to the Complainant. The family court repeatedly expressed the view that the DPA could not be ready for trial unless the DPA had personally spoken to the Complainant. The following colloquy ensued:

THE COURT: . . . . Now my question for the State is this. Have you personally spoken with the complainant?

[DPA]: No, Your Honor. Uh, I can ask my -- one of my --

THE COURT: No. No. If you're talking about victim-witness advocates, they're not paralegals. They're not licensed to practice law. They've had no legal training. And you, as the attorney, are a steward of the justice process and an officer of the court. <u>If you're telling me that you haven't spoken with the witness personally, then you're not ready.</u>

[DPA]: If that's the case then, Your Honor, we'll stipulate to the continuance.

THE COURT: I said it was a final continuance.

. . . .

THE COURT: Let me just -- let me just explain something. Have you talked with the complainant?

[DEFENSE COUNSEL]: Have I?

THE COURT: Yes[.]

[DEFENSE COUNSEL]: This morning, yes.

THE COURT: Have you talked to the complainant before that?

[DEFENSE COUNSEL]: Uh, I believe so. At the last trial call I spoke with her.

THE COURT: Okay. So, in other words, these complainants are approachable. You cannot sit here and with one voice say I haven't talked to the key witness in my case and then turn around and say I'm ready for trial. That's a non -- that's a non sequitur. It is part and parcel. You are telling me to summon a jury of 40 people to be here and try this case. You cannot tell me that you're ready for trial if -- if since October you've had this case and you still haven't talked to the complainant. You're not ready.

[DPA]: Your Honor, based on the information I have --

THE COURT: Mr. -- you're calling a witness to trial that's the centerpiece of your case. You cannot sit there and tell me that -- that you haven't talked to the witness but you're ready for trial. You will not be heard to say that. I will not risk 40 jurors on an unprepared case. And you've had six months to do it.

This case first came here in October. He hasn't once talked to the complainant. I know the complainant is approachable because the defense lawyer talked to him -- talked to her. That's it.

Let me just be crystal clear with you. Do not come into this court and tell me that you're ready for trial when you haven't talked to the complainant. That somebody else talked to the complainant and is feeding you information is inadequate. You can't do that. You're the lawyer. You're the officer of the court. And you're the one -- you are instructing me to summon 40 jurors into this court, and you cannot be heard to say that when you haven't even talked to the complainant in six months.

[DPA]: Well, Your Honor, with all due candor to the court, I haven't had to file for (inaudible) in six months.

THE COURT: I don't think it makes any difference.

[DPA]: But --

THE COURT: It doesn't make any difference. If you haven't talked to that witness after all the preparation time that you've had, then that's it, you're not ready.

(Bench conference concluded.)

(Emphases added.)

After the bench conference concluded, the family court entertained motions from the parties. The DPA again advised the

family court that he was ready to proceed with trial.  The DPA also advised the family court that he had just spoken with the Complainant.  The family court ruled that this was insufficient and granted Correa's motion to dismiss the case "with prejudice" on the ground that the State was not ready for trial:

> THE COURT:  I'll hear whatever motions you have.
>
> [DPA]:  And, Your Honor, again I mean State's willing to stipulate to a continuance.  But if the court's not willing to grant any continuance, then State's ready to proceed with trial.
>
> THE COURT:  Okay.  You haven't spoken with the complainant?
>
> [DPA]:  I just briefly --
>
> THE COURT:  Is that --
>
> [DPA]:  -- talked with her right now.
>
> THE COURT:  Is that -- is that a correct statement? You haven't spoken with the complainant?
>
> [DPA]:  I just spoke with her right now.
>
> THE COURT:  You have not spoken with the complainant?
>
> [DPA]:  Prior to today, no.  But I just spoke with her right now.
>
> THE COURT:  Yeah, just in the moment since I -- since I released you from the bench you've now spoken with her; is that right?
>
> [DPA]:  Yes, Your Honor.
>
> THE COURT:  Okay.  State -- and defense?
>
> [DEFENSE COUNSEL]:  Your Honor, I believe the State is not ready.  They had just spoken briefly with the complaining witness.  I move to dismiss the case.
>
> THE COURT:  Well, I do this with extreme reluctance, but this case first came on for calendar call on October 13th and the, uh -- it is insufficient.  <u>The State cannot be heard to say that it's ready for trial if it hasn't spoken in detail and in preparation with its complainant.  The motion is granted.  The dismissal is with prejudice.</u>
>
> [DPA]:  And, Your Honor, State would ask the court to reconsider and ask for a dismissal without prejudice.
>
> THE COURT:  I'm not going to do that.
>
> [DEFENSE COUNSEL]:  Thank you.

(Emphasis added.)

DISCUSSION

The State argues that the family court abused its discretion in dismissing the abuse charge against Correa with prejudice. The family court dismissed the charge with prejudice solely on the ground that the DPA had not personally spoken "in detail" to the Complainant before the calendar call on the date scheduled for trial.

We review a trial court's decision to dismiss a criminal charge for abuse of discretion. State v. Mendonca, 68 Haw. 280, 283, 711 P.2d 731, 734 (1985). We conclude that under the circumstances of this case, the family court abused its discretion in dismissing the charge against Correa.

Citing State v. Moriwake, 65 Haw. 47, 647 P.2d 705 (1982), Correa argues that the family court "properly exercised its 'inherent power' to dismiss this case where the State was not prepared to proceed to trial." We conclude that the Hawai'i Supreme Court's subsequent decision in State v. Alvey, 67 Haw. 49, 678 P.2d 5 (1984), and not Moriwake, is the applicable precedent for this case. Under Alvey, the family court abused its discretion in dismissing the charge against Correa.

I.

In Moriwake, the trial court dismissed with prejudice a manslaughter charge against Moriwake after Moriwake had undergone two trials which both ended in mistrials due to deadlocked juries. Moriwake, 65 Haw. at 48-50, 647 P.2d 708-09. The Hawai'i Supreme Court concluded that a trial court has the inherent power to dismiss "an indictment with prejudice following the declaration of one or more mistrials because of genuinely deadlocked juries," even though a retrial would not violate the defendant's constitutional rights. Id. at 55, 647 P.2d at 712. The court stated that it was "cognizant of the deference to be accorded the prosecuting attorney with regard to criminal

7

proceedings, but [that] such deference is not without bounds."
Id. at 56, 647 P.2d 712.  The court noted:

> Society has a strong interest in punishing criminal conduct.
> But society also has an interest in protecting the integrity
> of the judicial process and in ensuring fairness to
> defendants in judicial proceedings.  Where those fundamental
> interests are threatened, the 'discretion' of the prosecutor
> must be subject to the power and responsibility of the
> court.

Id. (quoting State v. Braunsdorf, 297 N.W.2d 808, 817 (Wis. 1980)
(Day, J., dissenting)).

The court described the trial court's exercise of its
inherent power to dismiss a charge as "a matter of balancing the
interest of the state against fundamental fairness to a defendant
with the added ingredient of the orderly functioning of the court
system."  Id. (citation and internal quotation marks omitted).
The court concluded that, in view of the two deadlocked juries
after two full, nearly identical trials and the absence of any
indication that a third trial would proceed differently, the
trial court had not abused its discretion in employing its
inherent power to dismiss the charge against Moriwake.  Id. at
57, 647 P.2d at 713.

II.

In Alvey, 67 Haw. at 58, 678 P.2d at 11, the supreme
court reached the opposite conclusion and held that the trial
court had abused its discretion in using its inherent power to
dismiss the charge.  Alvey was criminally charged with promoting
prison contraband.  Id. at 52, 678 P.2d at 7.  A prison
disciplinary committee had previously determined that there was
insufficient evidence to support an administrative prison
infraction that was based on the same incident as the criminal
charge.  Id. at 51-52, 678 P.2d at 6-7.  The trial court
dismissed the criminal charge with prejudice on the grounds that:
1) dismissal of the administrative prison infraction collaterally
estopped the criminal charge; and 2) dismissal of the criminal
charge was within its inherent power.  Id. at 52-53, 678 P.2d at
8.  With respect to the use of its inherent power, the trial

court reasoned that it "should not meddle in prison affairs by retrying an inmate who had already been absolved by prison officials under a lesser burden of proof" and that "judicial economy supported giving the prison hearing *res judicata* effect." Id. at 53, 678 P.2d at 8.

After concluding that the trial court erred in dismissing the charge on collateral estoppel grounds, the supreme court turned to address whether the trial court had properly exercised its inherent power. The supreme court held that the trial court had abused its discretion in dismissing the charge based on its inherent power. Id. at 58, 678 P.2d at 11. In support of this holding, the supreme court observed:

> Alvey has not cited a single authority for the proposition that a trial judge has the inherent power to dismiss an otherwise valid indictment prior to the defendant's first trial. Nor could we, for a judge's inherent power to dismiss an indictment is not so broad.

Id. at 57, 678 P.2d at 10. The supreme court noted that although a federal court is empowered to dismiss an indictment based on governmental or prosecutorial misconduct, such supervisory power will only be used "when the misconduct represents 'a serious threat to the integrity of the judicial process.'" Id. (citation, internal quotation marks, and block quote format omitted). The supreme court also cited state court decisions requiring "a 'clear denial of due process,' evidence some constitutional right has been violated, arbitrary action, or governmental misconduct" to justify the dismissal of a charge. Id. at 57-58, 678 P.2d at 10 (citations omitted).

With respect to the trial court's reliance on judicial economy to support the exercise of its inherent power, the supreme court stated, "Judicial economy is . . . not a legitimate reason to dismiss an indictment prior to a defendant's first trial. Except where Moriwake-type considerations apply, dismissing an indictment just to ease a crowded docket is an abuse of discretion." Id. at 58, 678 P.2d at 11.

The supreme court explained why Alvey's case was distinguishable from Moriwake:

> In bringing criminal charges against Alvey the State's interest is to prosecute prison crime. It is a strong interest. In Moriwake the judicial interest in preventing a third trial at which no new evidence would be presented, combined with fairness to the defendant, outweighed the State's interest in prosecution. Here, a trial will not waste judicial resources nor deny Alvey fair treatment.[6] We therefore hold that the trial judge abused his discretion in using his inherent power to dismiss the indictment.

---

> [6] While there are serious questions about Alvey's criminal intent, they are for the trier of fact to decide. 21 Am.Jur.2d, Criminal Law § 129 (1981).

Id.

### III.

Correa was charged with abuse of a family or household member. The State has a strong interest in prosecuting crimes involving domestic abuse. See Alvey, 67 Haw. at 58, 678 P.2d at 11; Coyle v. Compton, 85 Hawai'i 197, 208, 940 P.2d 404, 415 (App. 1997) (noting the Hawai'i Legislature's identification of "a state interest in preventing domestic abuse and in protecting family and household members against physical harm"). Correa was not previously tried on the abuse charge. There was no allegation that the DPA had engaged in conduct that infringed upon Correa's right to a fair trial. Thus, the family court's dismissal of the abuse charge was not necessary to protect the integrity of the judicial process or to ensure fairness to Correa in judicial proceedings. See Moriwake, 65 Haw. at 56, 647 P.2d 712. The following observation of the supreme court in Alvey applies to Correa's case:

> [The defendant] has not cited a single authority for the proposition that a trial judge has the inherent power to dismiss an otherwise valid indictment prior to the defendant's first trial. Nor could we, for a judge's inherent power to dismiss an indictment is not so broad.

Alvey, 67 Haw. at 57, 678 P.2d at 10. We conclude that the family court exceeded the permissible bounds of its inherent power in dismissing the charge against Correa.

The sole basis for the family court's decision to dismiss the abuse charge with prejudice was that the DPA had not personally spoken in detail with the Complainant before the calendar call. The family court was unwilling to accept any substitute for the DPA personally speaking in detail to the Complainant, and it specifically told the DPA, "[t]hat somebody else talked to the complainant and is feeding you information is inadequate." There is no indication that the DPA had advance notice before the calendar call of the family court's requirement.

In rendering its decision, the family court did not ask the DPA whether anyone on the prosecution's team besides the DPA had interviewed the Complainant. The family court did not ask the DPA whether the DPA had reviewed materials, such as police reports or interview statements, that would document the Complainant's anticipated testimony. Nor did the family court ask the DPA what the Complainant had told the DPA during their brief conversation; what evidence the State had to prove its case; or whether the State had evidence, such as a signed statement by the Complainant, that would permit the State to prove its case even if the Complainant recanted her allegations of abuse.

In addition, the reasoning underlying the family court's decision was flawed. It may not be necessary in all abuse cases for the DPA to personally speak in detail with the Complainant before the calendar call for the State to be ready for trial. The DPA may become prepared by having other members of the prosecution team interview the Complainant or by reviewing police reports or interview statements. Moreover, the family court assumed that the Complainant must have been available for a detailed personal interview with the DPA because the Complainant had previously spoken with defense counsel. However, complaining witnesses in domestic abuse cases do not always make themselves equally available to both parties before trial.

The prosecuting attorney is to be accorded deference in how to discharge the duties of his or her office, see Moriwake, 65 Haw. at 56, 647 P.2d at 712, which we conclude includes deference in how the prosecuting attorney prepares a case for trial. See United States v. Welch, 572 F.2d 1359, 1360 (9th Cir. 1978) (stating that the appellate court "will not interfere with the Attorney General's prosecutorial discretion unless it is abused to such an extent as to be arbitrary and capricious and violative of due process"); cf. Alvey, 67 Haw. at 57-58, 678 P.2d at 10-11. In this case, the family court imposed a blanket requirement that the only way the State could be ready for trial and avoid a dismissal with prejudice in a domestic abuse case is for the DPA to personally speak in detail with the Complainant before the calendar call. We conclude that in imposing and applying this inflexible rule in this case, the family court, without sufficient justification, encroached upon the prosecuting attorney's prerogative to decide how to prepare his or her case for trial.

As in Alvey, judicial economy was one of the family court's key concerns in and motivations for using its inherent power to dismiss the charge against Correa. The family court indicated that it did not want to call in jurors to try the case when the family court did not believe the State was ready. However, as the Alvey court made clear, "[j]udicial economy is . . . not a legitimate reason to dismiss an indictment prior to a defendant's first trial." Alvey, 67 Haw. at 58, 678 P.2d at 11. In addition, Moriwake-type considerations do not apply because Correa's case is clearly distinguishable from Moriwake. Correa did not undergo two prior trials where the juries deadlocked with no prospect for a different result in a third trial. Indeed, Correa was not subject to any previous trial, and requiring Correa to proceed to trial for the first time would not deny him fair treatment or have an adverse effect on the integrity of the judicial process. In the absence of Moriwake-type

considerations, "dismissing [a charge] just to ease a crowded docket is an abuse of discretion." Id. at 58, 678 P.2d at 11.

We recognize that to promote the orderly functioning of the court system, a trial court has an interest in ensuring the preparedness of counsel and in appropriate circumstances may sanction counsel for being unprepared. See, e.g., Hawai'i Rules of Penal Procedure (HRPP) Rule 53(b) (2000) ("An attorney who . . . unjustifiably fails to prepare for a presentation to the court necessitating a continuance may be subject to sanctions as the court deems appropriate.") However, even when the State violates the discovery requirements of HRPP Rule 16 (2007), the trial court abuses its discretion in dismissing the case if it fails to "consider whether less severe measures would rectify prejudice caused to the defendant by the violation." State v. Dowsett, 10 Haw. App. 491, 495, 878 P.2d 739, 742 (1994).

Here, there is no claim that the DPA had engaged in conduct that caused prejudice to Correa. There is no indication that the DPA had advance notice of the family court's view that the State could not be ready for trial unless the DPA personally spoke in detail with the Complainant before the calendar call. The family court did not ask the DPA why he had not previously spoken in detail with the Complainant or what other steps the DPA had taken to prepare for trial. There is also no indication that the family court considered any less severe measures before dismissing the abuse charge, such as sanctioning the DPA if that turned out to be appropriate.

The State was entitled to have a trial on the merits of the abuse charge against Correa. See Alvey, 67 Haw. at 58 n.6, 678 P.2d at 11 n.6. Under the circumstances of this case, we hold that the family court abused its discretion in using its inherent power to dismiss the charge against Correa.

13

CONCLUSION

We vacate the April 13, 2009, Dismissal Order filed by the family court, and we remand the case for further proceedings consistent with this opinion.


On the briefs:

James M. Anderson
Deputy Prosecuting Attorney
City & County of Honolulu
for Plaintiff-Appellant

Jeffrey A. Hawk
(Hawk Sing & Ignacio)
for Defendant-Appellee